## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LISA CALVENTE, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Case No.: 1:20-cv-03366 |
| **v.** | ) | |
| | ) | |
| SALMA GHANEM and DEPAUL | ) | |
| UNIVERSITY, | ) | |
| | ) | |
| **Defendants.** | ) | |

### DEFENDANTS' ANSWERS AND AFFIRMATIVE DEFENSES
### TO PLAINTIFF'S COMPLAINT AND JURY DEMAND

Defendants, Salma Ghanem ("Dr. Ghanem") and DePaul University ("DePaul" or "University"), by their attorneys, Cozen O'Connor, hereby submit their answers to Plaintiff's Complaint and Jury Demand.

### The Parties

1. Lisa Calvente ("Dr. Calvente") resides in Cook County, Illinois. At all times relevant to this complaint, Dr. Calvente was a tenure-track assistant professor of Intercultural Communication and Performance Studies within the College of Communication (the "College") at DePaul University ("DePaul" or the "University"). Dr. Calvente is an American of African, Latinx, and Asian descent.

**ANSWER:** Defendants admit at all times relevant to her Complaint, Plaintiff was a tenure-track assistant professor of Intercultural Communication and Performance Studies in the College of Communication at DePaul University. Defendants admit that according to the University's records, Plaintiff is a resident of Cook County, Illinois and Plaintiff self-identified as "Hispanic/Latino." Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 1.

2.      Salma Ghanem ("Dr. Ghanem") is the former dean of the College of Communication at DePaul, the former acting provost of DePaul, and the current interim provost of DePaul.  Dr. Ghanem maintains an office in Cook County, Illinois and, on information and belief, is also a resident of Cook County, Illinois.

**ANSWER:**     Defendants admit the allegations of Paragraph 2.

3.      DePaul is a not-for-profit corporation and is the largest Catholic university in the United States.  At all times relevant to this complaint, DePaul employed over five hundred people and was an employer as defined in 42 U.S.C. §2000e(b).  DePaul's principal place of business is in Chicago, Cook County, Illinois.

**ANSWER:**     The University admits the allegations of Paragraph 3.  The allegations of

Paragraph 3 are not directed to Dr. Ghanem and thus require no answer from Dr. Ghanem.

## Jurisdiction and Venue

4.      This Court has jurisdiction over Dr. Ghanem and DePaul because each of them committed the acts and omissions that are the subject of this litigation in Cook County, Illinois, which is in this district.  Alternatively, this Court has jurisdiction over the defendants because they are (on information and belief) both residents of Cook County, Illinois, which is in this district.

**ANSWER**:     Defendants admit that this Court has jurisdiction over Dr. Ghanem and the

University because the events giving rise to Plaintiff's actionable claims allegedly occurred in this

judicial district and Defendants reside in this District. Except as specifically admitted, Defendants

deny the allegations of Paragraph 4 and further deny that they violated any law or committed any

wrongdoing whatsoever.

5.      Venue is proper in this Court pursuant to U.S.C. §1391(b)(1) because Dr. Ghanem and DePaul are residents of this district.  Alternatively, venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the acts and omissions giving rise to this litigation occurred in this district.

**ANSWER:**    Defendants admit that the venue is proper under 28 U.S.C. 1391(b) because the events giving rise to Plaintiff's actionable claims allegedly occurred in this judicial district and Defendants reside in this District. Except as specifically admitted, Defendants deny the allegations of Paragraph 5 and further deny that they violated any law or committed any wrongdoing whatsoever.

6.    This Court has jurisdiction over the subject matter pursuant to 28 U.S.C. §1331 because Counts I and III allege a violation of 42 U.S.C. §1981 and Counts II and IV allege a violation of 42 U.S.C. §2000e, *et seq.*  This Court has jurisdiction over the state law claim alleged in Count V pursuant to 28 U.S.C. §1367 because that claim is so related to the federal claims that it forms the basis for the same case or controversy.

**ANSWER:**    Defendants admit the allegations of Paragraph 6, but deny they violated any law or committed any wrongdoing whatsoever.

## Factual Allegations

7.    This litigation seeks redress for significant abuses by Dr. Ghanem and DePaul University that were alternatively (i) in retaliation for Dr. Calvente's complaints about racism within the College of Communication, and (ii) motivated by Dr. Calvente's race, which abuses culminated in the denial of Dr. Calvente's application for tenure and promotion from assistant professor to associate professor.

**ANSWER:**    Defendants deny the allegations of Paragraph 7.

8.    Dr. Calvente's areas of research are the black diaspora, performance studies, and cultural studies with a particular interest in how performance and media ethnography can be used to interrogate discursive formations of racism, classism, and hetero/sexism in order to generate possibilities of belonging and social justice.  She was hired to teach and to research, principally, the uncomfortable subjects of race and racism in the United States, a topic that scholarly research has described as impossible to teach to undergraduate students without causing discomfort.  Dr. Calvente joined DePaul's faculty at the start of the 2011/2012 academic year.

**ANSWER:** Defendants admit that Plaintiff joined DePaul's faculty at the start of the 2011-2012 academic year, and that she has accurately described her areas of research. Except as specifically admitted, Defendants deny the allegations of Paragraph 8.

9.      As is the case in many other universities in the United States, the grant of tenure at DePaul "creates the presumption of continuing employment …." (DePaul University Faculty Handbook dated July 1, 2018 (the "Handbook") §3.1, a copy of which is attached as Exhibit 1). Indeed, the Handbook describes the rights and responsibilities of faculty at DePaul and also articulates the terms and conditions of faculty employment. In addition, the Handbook permits local academic units to articulate more specific guidelines with respect to their requirements for tenure and promotion so long as those guidelines are consistent with the Handbook.

**ANSWER:** Defendants admit that Plaintiff has attached to her Complaint a copy of the July 1, 2018 Faculty Handbook. Defendants admit further that Section 3.1 of the Handbook provides, in part, that tenure "creates the presumption of continuing employment," but denies that Plaintiff has restated here either the full import or the full text of the four paragraphs contained in Section 3.1 of the Handbook, including any exceptions to the presumption of continued employment. Defendants admit that the Handbook sets forth the rights, obligations and terms and conditions of employment of faculty at DePaul. Defendants admit that local academic units have the responsibility to adopt written guidelines and policies for tenure-line faculty evaluation, which must be consistent with the University's criteria and procedures in the Handbook. Except as specifically admitted, Defendants deny the allegations of Paragraph 9.

10.     Chapter 3 of the Handbook articulates a multi-step process for evaluating a faculty member's application for tenure. As the first step, tenured faculty members of the local academic unit (in Dr. Calvente's case, the College) vote on the candidate's application for tenure. Then, the file is then sent to the University Board of Promotion and Tenure (the "UBPT"), which is comprised of seven tenured faculty members from across the University. The UBPT then makes an independent review of the tenure file and takes an independent vote to grant or deny tenure. However, as a practical matter, the recommendation of the UBPT is rarely different from that of the local academic unit. After the UBPT vote, the tenure file goes to the University provost for a

LEGAL\47715392\1

final decision on the grant or denial of tenure. Because section 3.5.6.3 of the Handbook requires the provost to overturn the decision of the UBPT "[o]nly in rare instances and for compelling reasons," the decision of the UBPT to grant or deny tenure is typically final.

**ANSWER:**   Defendants admit that Chapter 3 of the Handbook explains the multi-step process for evaluating a faculty member's application for tenure, and that each level of review is a substantive one.  Defendants admit that the first step of the evaluation is at the local academic unit, which in Plaintiff's case was the College of Communication.  Defendants admit that after the local academic unit's evaluation is complete, the next review is completed by a seven-member university-wide committee (UBPT), which conducts a substantive review and takes a vote to grant or deny tenure.  Defendants admit that after the UBPT vote, the tenure case goes to the University provost for a final decision.  Except as specifically admitted, Defendants deny the allegations of Paragraph 10.

11.     The standards evaluating candidates for tenure and promotion are articulated in Chapter 3 of the Handbook.  As section 3.4.2 of the Handbook states, faculty are to be evaluated based on teaching and learning (collectively "teaching") (Handbook §3.4.2.1); scholarship, research, or other creative activities (collectively "research") (*id.* at §3.4.2.2); and service (*id.* at §3.4.2.3).  Expressly prohibited in evaluating a candidate's tenure application – both under Chapter 6 of the Handbook and also under state and federal law – are a faculty member's race or her opposition to racism within her academic unit or the broader University.

**ANSWER:**   Defendants admit that Plaintiff has generally identified the University's three criteria for evaluating a candidate for tenure, as set forth in the University's Faculty Handbook.  Defendants further admit that the University prohibits making tenure decisions based on race or opposition to unlawful employment practices.  Insofar as Paragraph 11 asserts legal conclusions, no answer by Defendants is required.  Except as specifically admitted, Defendants deny the allegations of Paragraph 11.

12.     A candidate who is unsuccessful in her application for tenure at DePaul is offered a one-year terminal contract that starts at the beginning of the academic year following the denial. That candidate is then dismissed from faculty at the end of the terminal contract.

**<u>ANSWER</u>:**     Defendants admit that a candidate who is unsuccessful in her tenure application at DePaul is typically offered a one-year terminal contract for the academic year following the tenure denial, upon the expiration of which the candidate's employment at DePaul ends.  Except as specifically admitted, Defendants deny the allegations of Paragraph 12.

13.     Prior to a faculty member's formal application for tenure, that faculty member is periodically and formally reviewed by the tenured faculty, or a subset thereof, in her academic unit.  (Section 3.3.3.1 of the Handbook refers to these as probationary reviews.)  The purpose of these probationary reviews is to report on the faculty member's progress towards tenure and to determine whether the faculty member will be renewed.  Accordingly, the untenured faculty member is reviewed based on her teaching, research, and service to her academic unit and the University.  In the College, the Personnel Committee (a subset of the tenured faculty) conducts these reviews every two years.

**<u>ANSWER</u>:**     Defendants admit that a tenure track faculty member is subject to periodic informal and formal reviews, and that two of the purposes of such reviews are to assess the faculty member's progress toward promotion and/or tenure, measured against the teaching, research and service criteria, and to recommend for or against renewal.  Defendants admit further that formal reviews are to be conducted no less than every two years.  Except as specifically admitted, Defendants deny the allegations of Paragraph 13.

14.     Probationary reviews are among the only methods of terminating the employment of a tenure-line faculty member.  The other methods of terminating a tenure-line faculty member's employment include (i) the denial of tenure following a tenure-line faculty member's application for tenure and promotion, and (ii) the process articulated in Chapter 4 of the Handbook.

<u>ANSWER</u>:     Defendants admit that non-renewal based on a probationary review and denial of tenure are two bases for terminating the employment of a tenure-track faculty member,

as set forth in Chapter 4 of the Handbook.  Except as specifically admitted Defendants deny the allegations of Paragraph 14.

15.     Dr. Calvente received her probationary reviews in the winter of 2013, in March 2015, and in November 2017.  Although the Personnel Committee lodged no objection to Dr. Calvente in 2013, it is extremely rare for a tenure-track professor at DePaul to be recommended for non-renewal after one review recycle.  In both 2015 and 2017, following changes in its composition, the Personnel Committee recommended Dr. Calvente's contract not be renewed.

**ANSWER:**     Defendants admit that Plaintiff underwent formal probationary reviews culminating in reports dated March 1, 2013, March 23, 2015 and November 17, 2017.  Defendants admit further that the Personnel Committee in 2013 recommended renewal by a majority vote and recommended against renewal in 2015 and 2017, by majority votes.  Defendants admit that the composition of the Personnel Committee changed between 2013 and 2017.  Except as specifically admitted, Defendants deny the allegations of Paragraph 15.

16.     The March 7, 2015 report from the Personnel Committee recommending Dr. Calvente's termination is attached as Exhibit 2.

**ANSWER:**     Defendants admit the Personnel Committee recommended termination of Plaintiff's employment on March 23, 2015, but deny Exhibit 2 is a true and correct copy of the final report and recommendation.

17.     The Personnel Committee's March 2015 evaluation was problematic for several reasons.  First, with respect to Dr. Calvente's teaching, the evaluation (willfully) ignored the (i) supermajority of her qualitative student evaluations, which praised Dr. Calvente's teaching, and (ii) her quantitative scores, which surpassed the average scores for all College faculty in several areas.  Indeed, the Personnel Committee's review of Dr. Calvente's teaching was so inconsistent with her file, that a January 15, 2020 report from an independent (*i.e.,* not affiliated with the College) Faculty Appeals Committee opined that it approached "willful distortion."  (*See infra* paragraph 31.)  The Personnel Committee, however, did not so unfairly evaluate white faculty during their probationary reviews.

**ANSWER:** Defendants deny the allegations of Paragraph 17.

18. Notwithstanding the Personnel Committee's March 2015 recommendation, the then-dean of the College, Dr. Ghanem, reappointed Dr. Calvente to the College's faculty.

**ANSWER:** Defendants admit the allegations of Paragraph 18.

19. Following the Personnel Committee's 2015 recommendation of non-renewal, Dr. Calvente filed a complaint with DePaul's Office of Institutional Diversity and Equity ("OIDE") in June 2015. (As per then-current University policy, OIDE was tasked with investigating claims of discrimination or harassment on the basis of status protected by federal, state, or local law.) The complaint highlighted, among other issues, that tenured faculty at the College (i) ignored the majority of both Dr. Calvente's qualitative and quantitative teaching evaluations that state that she is an excellent instructor, which evaluations were not ignored for white tenure-track teachers, (ii) ignored her evaluation scores, which surpassed all of the faculty averages in various areas, which it did not do for white tenure-track teachers, (iii) focused on the super minority of qualitative evaluations labeling her as hostile, which it did not do for white tenure-track teachers, and (iv) that her mistreatment was similar to mistreatment suffered by another (former) faculty of color in the College, Lisa Pecot-Hebert, who was ultimately forced out of the College.

**ANSWER:** Defendants admit that in June 2015 Plaintiff made a complaint to OIDE, which was tasked with investigating claims of discrimination or harassment on the basis of status protected by federal, state or local law. Defendants admit further that the allegations set forth in this Paragraph 19 generally describe the nature of her complaints, except that Defendants deny that Calvente used the phrase "super minority" in her complaint. Defendants deny having engaged in the conduct set forth in Plaintiff's 2015 complaint to OIDE.

20. OIDE ultimately closed its investigation into Dr. Calvente's June 2015 complaint on July 6, 2016, finding insufficient evidence of a violation of the University's Anti-Discrimination and Anti-Harassment Policy and Procedures.

**ANSWER:** Defendants admit the allegations of Paragraph 20.

8

21.     On November 17, 2017, the Personnel Committee again recommended that Dr. Calvente's contract not be renewed, again citing alleged deficiencies with Dr. Calvente's teaching and her record of service. With respect to Dr. Calvente's teaching, the Personnel Committee again emphasized the qualitative experience of a super-minority (2.5% during academic year 2017) of students who reported feeling uncomfortable in Dr. Calvente's class due to the manner in which Dr. Calvente taught race and American racism, and it again ignored that (i) Dr. Calvente's quantitative scores were superior to most of her colleagues within the College, and (ii) the supermajority of Dr. Calvente's qualitative scores were very positive.

**ANSWER:**     Defendants admit that the Personnel Committee recommended non-renewal of Plaintiff's contract on November 17, 2017 and admit further that in its report the Personnel Committee noted that she was not sufficiently progressing towards tenure in the areas of teaching and service. Except as specifically admitted, Defendants deny the allegations of Paragraph 21.

22.     The November 17, 2017 report from the Personnel Committee recommending Dr. Calvente's termination is attached as Exhibit 3.

**ANSWER:**     Defendants admit the allegations of Paragraph 23.

23.     Notwithstanding the Personnel Committee's November 2017 recommendation, Dr. Ghanem reappointed Dr. Calvente to the College's faculty.

**ANSWER:**     Defendants admit the allegations of Paragraph 23.

24.     In the fall of 2018, Dr. Calvente and Dr. Sydney Dillard (an untenured member of the College's faculty and an American of African Descent) presented a joint complaint to Dr. Ghanem concerning patterns of racial harassment, bullying, marginalization, and microaggressions with the College. This fall 2018 meeting was the first claim of racism and racial harassment that Dr. Calvente made directly to Dr. Ghanem.

**ANSWER:**     Defendants admit that Plaintiff and Dr. Dillard, who at the time was an untenured faculty member in the College and who is an American of African Descent, met with Ghanem in the fall of 2018, during which meeting Plaintiff and Dr. Dillard raised concerns about

alleged racial harassment, bullying, marginalization and microaggressions within the College.

Except as specifically admitted, Defendants deny the allegations of Paragraph 24.

25. Consistent with then-current DePaul policy concerning complaints of discrimination, Dr. Ghanem forwarded the concerns raised by Dr. Calvente and Dr. Dillard to DePaul's office of Human Resources ("HR"). On information and belief, it was widely known within the College that (i) Dr. Dillard and Dr. Calvente complained about racism within the College to Dr. Ghanem, and (ii) HR would be investigating these complaints.

**ANSWER:** Defendants admit that Dr. Ghanem forwarded the concerns raised by Plaintiff and Dr. Dillard to DePaul's office of Human Resources. Except as specifically admitted, Defendants deny the allegations of Paragraph 25.

26. HR attempted to schedule a meeting with both Dr. Calvente and Dr. Dillard to discuss their concerns. Dr. Calvente and Dr. Dillard and a representative from HR ultimately set a meeting for November 20, 2018; however, Dr. Dillard never showed up for the meeting as she withdrew her complaint at some unspecified time.

**ANSWER:** Defendants admit that Human Resources scheduled a meeting for November 20, 2018 with Plaintiff and Dr. Dillard. Except as specifically admitted, Defendants deny the allegations of Paragraph 26.

27. Both Dr. Calvente and Dr. Dillard applied for tenure and promotion from assistant professor to associate professor during 2018/2019 academic year. Moreover, Dr. Calvente's tenure dossier was *at least as strong* as Dr. Dillard's in the areas of research and service, and stronger than Dr. Dillard's in the area of teaching. Nevertheless, the vote by the College faculty on Dr. Calvente's tenure application was 19-2 against the grant of tenure. (A copy of the dean's summary of the College's vote on Dr. Calvente's application is attached as Exhibit 4.) With respect to Dr. Dillard's application, the College recommended that she receive tenure. Dr. Ghanem – who had been since been reappointed to serve as acting provost (*see infra* ¶29) – then tenured Dr. Dillard.

**ANSWER:** Defendants admit that both Plaintiff and Dr. Dillard applied for tenure and promotion from Assistant Professor to Associate Professor during the 2018/2019 academic year.

Defendants admit further that the College recommended that Dr. Dillard be granted tenure, and admit further that Dr. Ghanem granted Dr. Dillard tenure. Defendants admit further that the vote by the College faculty on Plaintiff's tenure application was 19-2 against the grant of tenure, as set forth in Exhibit 4 to Plaintiff's Complaint. Except as specifically admitted, Defendants deny the allegations of Paragraph 27.

28. Following the College's vote on Dr. Calvente's tenure application, the UBPT conducted its independent review of the file. And after that review, the UBPT (which, at the time, had one member from the College, Bruno Teboul, on it) recommended that Dr. Calvente receive tenure by a vote of 4-3. On information and belief, had Dr. Teboul abstained from voting, as he would have been required to do at many other universities, the vote would have been 4-2 in Dr. Calvente's favor. (A copy of the UBPT's recommendation is attached as Exhibit 5.)

**ANSWER:** Defendants admit that the UBPT conducted a substantive review of Plaintiff's tenure case after the College's vote on her case. Defendants admit that Bruno Teboul, a faculty member in the College, was a member of the UBPT in 2019. Defendants admit that the UBPT recommended that Plaintiff be granted tenure by a vote of 4-3, and that Exhibit 5 to the Complaint is a copy of the UBPT's recommendation. Except as specifically admitted, Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 28.

29. In October 2018, Dr. Ghanem was elevated to the position of Acting Provost of DePaul. This promotion meant that Dr. Ghanem – who had been dean of the College for much of Dr. Calvente's professional life – would decide whether Dr. Calvente would remain employed at DePaul. Ultimately, Dr. Ghanem sided with her former colleagues and refused to grant tenure to Dr. Calvente *even though* Dr. Calvente's file was at least as strong as that of a professor who complained about discrimination within Dr. Ghanem's academic unit and who then retracted that complaint. Following her decision to deny tenure to Dr. Calvente, Dr. Ghanem wrote that Dr. Calvente would receive a terminal contract and that her last day as faculty member at DePaul would be June 30, 2020. (A copy of Dr. Ghanem's letter denying Dr. Calvente's application for tenure and promotion is attached as Exhibit 6.)

**ANSWER:**     Defendants admit that Dr. Ghanem was promoted to Acting Provost in or around October 2018.  Defendants admit that Dr. Ghanem decided against awarding tenure to Plaintiff, and notified Plaintiff of her decision and the award of a terminal contract that would expire on June 30, 2020.  Defendants admit that Exhibit 6 is a copy of Dr. Ghamen's letter to Plaintiff, notifying Plaintiff of Dr. Ghanem's decision on her tenure case.  Except as specifically admitted, Defendants deny the allegations of Paragraph 29.

30.     Chapter 5 of the Handbook permits a faculty member to appeal the denial of her tenure application.  Accordingly, following Dr. Ghanem's decision to deny her application, Dr. Calvente appealed to the Faculty Committee on Appeals, which appointed three faculty unaffiliated with the College to serve as an Appeals Board.

**ANSWER:**     Defendants admit the allegations of Paragraph 30.

31.     After preliminarily investigation, the Appeals Board dismissed two of Dr. Calvente's grounds for appeal and investigated a third ground for appeal.  Ultimately, the Appeals Board issued a thirty-four page report to the President of DePaul (copy attached as Exhibit7) explaining how (i) Dr. Calvente was evaluated unfairly at multiple points in 2015 and 2017, and (ii) these unfair evaluations were material to the ultimate denial of tenure.

**ANSWER:**     Defendants admit that the Appeals Board issued a 34-page report to the University's president, which is attached as Exhibit 7.  Defendants admit that in its report, the Appeals Board dismissed two grounds of appeal and made a finding on the third ground.  Defendants deny that Plaintiff has accurately summarized the finding on the third ground.  Except as specifically admitted, Defendants deny the allegations in Paragraph 31.

32.     It is unusual for an Appeals Board at DePaul to recommend the overturning of the provost's decision to deny tenure.  However, notwithstanding the Appeals Board's report and recommendation, DePaul ultimately decided against the award of tenure to Dr. Calvente, and her employment at DePaul will end on June 30, 2020.

**ANSWER:** Defendants admit that the University ultimately decided against the award of tenure to Plaintiff and that her employment ended on June 30, 2020. Except as specifically admitted, Defendants deny the allegations of Paragraph 32.

## COUNT I
*(Violation of 42 U.S.C. §1981 – retaliation against DePaul and Dr. Ghanem)*

33. Paragraphs 1-32 are re-alleged and incorporated as if fully set forth herein.

**ANSWER:** Defendants incorporate by reference the answers to each allegation contained in Paragraphs 1-32 as if fully restated herein.

34. By refusing to grant her applications for tenure and promotion, and through the soon to occur termination of her employment, Dr. Ghanem and DePaul deprived Dr. Calvente of the same rights and privileges enjoyed by her colleagues who never complained about racial discrimination, harassment, or marginalization.

**ANSWER:** Defendants deny the allegations of Paragraph 34.

35. Dr. Calvente's complaints about racial discrimination, harassment, and marginalization within the College were the "but for" factor that caused Dr. Ghanem and DePaul to terminate her employment.

**ANSWER:** Defendants deny the allegations of Paragraph 34.

36. As a result of the denial of tenure and promotion, and as a result of the upcoming termination of her employment, Dr. Calvente has been denied, and will be denied opportunities to earn substantial compensation and benefits. Moreover, Dr. Calvente has suffered anguish, humiliation, distress, inconvenience, and loss of enjoyment of life because of Dr. Ghanem's and DePaul's actions, thereby entitling her to compensatory damages.

**ANSWER:** Defendants deny the allegations of Paragraph 36.

37.     In refusing to tenure and promote her, and through the upcoming termination of her employment, Dr. Ghanem and DePaul acted with malice and/or reckless indifference to the rights of Dr. Calvente, thereby entitling Dr. Calvente to an award of punitive damages.

**ANSWER:**     Defendants deny the allegations of Paragraph 37.


## <u>COUNT II</u>
### *(Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, et seq. – retaliation against DePaul)*

38.     Paragraphs 1-32 are realleged and incorporated as if fully set forth herein.

**ANSWER:**     DePaul incorporates by reference answers to each allegations contained in

Paragraphs 1-32 as if fully restated herein.


39.     By refusing to grant her applications for tenure and promotion, and through the soon to occur termination of her employment, DePaul deprived Dr. Calvente of the same rights and privileges enjoyed by her colleagues who never complained about racial discrimination, harassment, or marginalization.

**ANSWER:**     DePaul denies the allegations of paragraph 39.


40.     Dr. Calvente's complaints about racial discrimination, harassment, and marginalization within the College were the motivating factor that caused DePaul to terminate her employment.

**ANSWER:**     DePaul denies the allegations of Paragraph 40.


41.     As a result of the denial of tenure and promotion, and as a result of the upcoming termination of employment, Dr. Calvente has been denied, and will be denied opportunities to earn substantial compensation and benefits.  Moreover, Dr. Calvente has suffered anguish, humiliation, distress, inconvenience, and loss of enjoyment of life because of Dr. Ghanem's and DePaul's actions, thereby entitling her to compensatory damages.

**ANSWER:**     DePaul denies the allegations of Paragraph 41.

LEGAL\47715392\1

42.     In refusing to tenure and promote her, and through the upcoming termination of her employment, Dr. Ghanem and DePaul acted with malice and/or reckless indifference to the rights of Dr. Calvente, thereby entitling Dr. Calvente to an award of punitive damages.

**ANSWER:**     DePaul denies the allegations of Paragraph 42.


**<u>COUNT III</u>**

***(Violation of 42 U.S.C. §1981 – racial discrimination against DePaul and Dr. Ghanem)***

43.     Paragraphs 1-32 are re-alleged and incorporated as if fully set forth herein.

**ANSWER:**     Defendants incorporate by reference answers to each allegation contained in Paragraphs 1-32 as if fully restated herein.


44.     By refusing to tenure and promote her, and through the upcoming termination of Dr. Calvente, Dr. Ghanem and DePaul deprived Dr. Calvente of the same rights and privileges enjoyed by her non-mixed race colleagues as to the performance, enjoyment, and all of the benefits and privileges of her contractual employment relationship with it.

**ANSWER:**     Defendants deny the allegations of Paragraph 44.


45.     Dr. Calvente's race was the "but for" cause in DePaul's and Dr. Ghanem's decision with respect to the refusal to tenure and promote her, and with respect to the upcoming termination of her employment.

**ANSWER:**     Defendants deny the allegations of Paragraph 45.


46.     As a result of DePaul's and Dr. Ghanem's discrimination, Dr. Calvente has been denied employment opportunities and the opportunity to earn substantial compensation and benefits.  Moreover, Dr. Calvente has suffered anguish, humiliation, distress, inconvenience, and loss of enjoyment of life because of Dr. Ghanem's and DePaul's actions, thereby entitling her to an award of compensatory damages.

**ANSWER:**     Defendants deny the allegations of Paragraph 46.

47.     In refusing to tenure and promote her, and through the forthcoming termination of Dr. Calvente's employment, Dr. Ghanem and DePaul acted with malice and/or reckless indifference to her rights, thereby entitling Dr. Calvente to an award of punitive damages.

**ANSWER:**     Defendants deny the allegations of Paragraph 47.


## COUNT IV
*(Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e – race discrimination against DePaul)*

48.     Paragraphs 1-32 are re-alleged and incorporated as if fully set forth herein.

**ANSWER:**     DePaul incorporates by reference answers to each allegation contained in Paragraphs 1-32 as if fully restated herein.


49.     By refusing to tenure and promote her, and through the upcoming termination of Dr. Calvente, Dr. Ghanem and DePaul deprived Dr. Calvente of the same rights and privileges enjoyed by her non-mixed race colleagues as to the performance, enjoyment, and all of the benefits and privileges of her contractual employment relationship with it.

**ANSWER:**     DePaul denies the allegations of Paragraph 49.


50.     Dr. Calvente's race was the motivating factor in DePaul's and Dr. Ghanem's decision with respect to the refusal to tenure and promote her, and with respect to the upcoming termination of her employment.

**ANSWER:**     DePaul denies the allegations of Paragraph 50.


51.     As a result of DePaul's discrimination, Dr. Calvente has been denied employment opportunities and the opportunity to earn substantial compensation and benefits.  Moreover, Dr. Calvente has suffered anguish, humiliation, distress, inconvenience, and loss of employment of life because of DePaul's actions, thereby entitling her to an award of compensatory damages.

**ANSWER:**     DePaul denies the allegations of Paragraph 51.

52.     In refusing to tenure and promote her, and through the forthcoming termination of Dr. Calvente's employment, Dr. Ghanem and DePaul acted with malice and/or reckless indifference to her rights, thereby entitling Dr. Calvente to an award of punitive damages.

**ANSWER:**     DePaul denies the allegations of Paragraph 52.


## COUNT V
### *(Breach of contract against DePaul)*

53.     Paragraphs 1-32 are re-alleged and incorporated as if fully set forth herein.

**ANSWER:**     DePaul incorporates by reference answers to each allegation contained in

Paragraphs 1-32 as if fully restate herein.


54.     Through the Handbook and other documents referenced therein, DePaul defined the procedures and criteria for tenure and promotion, and thereby created the terms and conditions of an employment contract between it and Dr. Calvente.

**ANSWER:**     DePaul denies the allegations of Paragraph 54.


55.     By accepting her appointment as a tenure track faculty member at DePaul, Dr. Calvente and DePaul agreed that her applications for tenure and promotion were to be governed by the Handbook's tenure criteria and procedures.

**ANSWER:**     DePaul admits the allegations of Paragraph 55.


56.     The Handbook requires that a candidate for tenure and promotion be given fair consideration and evaluation in the areas of teaching, research, and service at all levels.

**ANSWER:**     DePaul admits that the Faculty Handbook sets forth a tenure review process

that promotes fairness as a means for avoiding arbitrary decision making.  Except as specifically

admitted, DePaul denies the allegations of Paragraph 56.

57.     The Handbook further requires that tenure and promotion decisions not be based on racial discrimination or based on retaliation for complaining about racial discrimination.

**ANSWER:**     DePaul admits that that the Faculty Handbook restates DePaul's policy prohibiting discrimination and retaliation in making employment decisions.  Except as specifically admitted, DePaul denies the allegations of Paragraph 57.

58.     In denying Dr. Calvente's applications for tenure and promotion, the University failed to evaluate Dr. Calvente fairly by, among other things, (i) willfully distorting her record with respect to her teaching, and (ii) failing to provide clear and consistent guidance concerning expectations for service during formal reviews.

**ANSWER:**     DePaul denies the allegations of Paragraph 58.

59.     Further, in denying Dr. Calvente's applications for tenure and for promotion, the University (i) failed to treat her in the same manner as similarly situated persons who did not complain about racial harassment within the College, and (ii) failed to treat her in the same manner as similarly situated persons who were not of mixed race.

**ANSWER:**     DePaul denies the allegations of Paragraph 59.

60.     DePaul's denial of Dr. Calvente's applications for tenure and promotion breached its contract with her.

**ANSWER:**     DePaul denies the allegations of Paragraph 59.

61.     As a result of DePaul's decision to deny Dr. Calvente's applications for tenure and promotion, Dr. Calvente has suffered damages including lost wages and benefits.

**ANSWER:**     DePaul denies the allegations of Paragraph 61.

## AFFIRMATIVE DEFENSES

1.      Plaintiff's allegations are barred insofar as they fail to state a claim upon which relief can be granted.

2.      Plaintiff's Title VII claims are barred to the extent that they exceed the scope of her EEOC charge.

3.      Insofar as Plaintiff's Title VII claims are based on actions that occurred outside of the applicable limitations period for filing a charge of discrimination, they are time-barred.

4.      Insofar as Plaintiff's Section 1981 claims are based on actions that occurred outside of the applicable statute of limitations period, they are time-barred.

5.      Plaintiff's Section 1981 claims are barred to the extent she has not alleged a protected status under Section 1981.

6.      At all times pertinent to this case, Defendants made a good faith effort to comply with the law, and, therefore, are not liable for any alleged intentional, malicious, or grossly negligent acts of its agents or employees.

7.      Plaintiff's claim for damages are barred, in whole or in part, by a failure to mitigate damages to the extent required by the law.

8.      Plaintiff's Title VII and Section 1981 claims are barred, either in whole or in part, by the ministerial exemption.

9.      Defendants reserve the right to plead additional defenses as new information and defenses may arise through the course of discovery in this matter.

WHEREFORE, Defendants respectfully requests the Court to enter judgment in its favor on each count of Plaintiff's Complaint, along with any further relief as the Court deems just and proper.

LEGAL\47715392\1

Dated:  August 7, 2020

Respectfully submitted,

By: /s/ Anneliese Wermuth
       Attorney for Defendants, Salma Ghanem and
       DePaul University

Anneliese Wermuth (#6270970)
Nandini K. Sane
Cozen O'Connor
123 N. Wacker Drive, Ste. 1800
Chicago, IL  60606
Telephone:    312/474-7876
Email: awermuth@cozen.com
Email: nsane@cozen.com

*Attorney for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that on August 7, 2020, she electronically filed the foregoing **Defendants' Answers and Affirmative Defenses to Plaintiff's Complaint and Jury Demand** with the Clerk of the United States District Court for the Northern District of Illinois using the ECF system, which will send notification of such filing to the following counsel of record:

> Fitzgerald T. Bramwell
> Law Offices of Fitzgerald Bramwell
> 225 West Washington Street, Ste. 2200
> Chicago, IL  60606
> bramwell@fitzgeraldbramwell.com

> s/ *Anneliese Wermuth*
> Anneliese Wermuth