| | |
|---|---|
| **From**: | President [PRESIDENT@depaul.edu] |
| on behalf of | President <PRESIDENT@depaul.edu> [PRESIDENT@depaul.edu] |
| **Sent**: | 1/30/2020 6:31:39 PM |
| **To**: | Calvente, Lisa [LCALVENT@depaul.edu] |
| **CC**: | Ghanem, Salma [SGHANEM@depaul.edu]; Murphy, Alexandra [AMURPHY1@depaul.edu] |
| **Subject**: | Letter from President Esteban |
| **Attachments**: | Calvente P&T Appeal January 30 2020.pdf |

Dear Dr. Calvente,

Please find attached my response to your Promotion and Tenure appeal. A hard copy will also be sent via US mail.

Sincerely,

**A. Gabriel Esteban**
President| Office of the President | DePaul University
1 E. Jackson Blvd. | Chicago, IL 60604
Tel: (312) 362-8890 | Fax: (312) 362-7577
president@depaul.edu | www.depaul.edu

EXHIBIT

231

Calvente-DePaul 021841



# DePaul
# University

January 30, 2020

**Office of the President**
1 East Jackson Boulevard
Chicago, Illinois 60604-2287
312/362-8850
FAX: 312/362-7577

**Via E-mail (lcalvent@depaul.edu) and U.S. Mail**

Lisa B. Y. Calvente
6748 N. Glenwood Avenue
Chicago, IL 60626

Dear Dr. Calvente:

The Appeals Board appointed by the Faculty Committee on Appeals has recommended reconsideration of the negative decision on your application for promotion and tenure at the end of the 2019-20 academic year. For the reasons explained below, I do not accept the Appeals Board's recommendation that the appeal be granted.

I have reviewed the dossier materials, the appeal materials, and the relevant Faculty Handbook provisions. After reviewing the University Board on Promotion and Tenure's ("UBPT") original recommendation, the Interim Provost's letter, and the Appeals Board's report, I see no compelling reason to reconsider the Interim Provost's decision. Specifically, you participated in and had the full benefit of a faculty-run process with multiple checks and balances over preceding levels of review. This multi-tiered process worked as it was intended and ultimately the UBPT made its recommendation to the Interim Provost. After reviewing the dossier and UBPT's recommendation, Interim Provost Ghanem[1] rejected this recommendation and explained her rationale. I see no material procedural irregularities warranting reversal of the denial of your application for promotion and tenure.

## A. Faculty Handbook Policies and Procedures.

The Appeals Board's analysis does not fully detail the multiple procedural protections built into the Faculty Handbook. As such, I begin with a summary of the provisions that inform my review of this appeal.

*First*, it is essential to note that the Faculty Handbook places the burden of proof (by a preponderance of the evidence) on the appealing faculty member. (*See* Handbook section 5.1.1.)

*Second*, the Appeals Board may not perform its own evaluation of the faculty member's qualifications at the appeal level. Rather, it is charged only with reviewing the basis of the appeal. (*See* Handbook sections 5.1.1.4, 5.1.2.3.)

---

[1] At the time of your review, Dr. Ghanem's title was Acting Provost.

*Third*, the promotion and tenure review process is a multi-tiered evaluation of faculty, by faculty. The Faculty Handbook outlines the general criteria – scholarship, teaching, and service – for promotion and tenure review and also explains the nature of the evaluation at the local and university levels. A key feature of DePaul's promotion and tenure review process is its transparency, which requires that each level prepare a detailed report of its findings and conclusions and forward that report to the candidate and to the subsequent level. The candidate has the opportunity to respond to each report, and this response goes to the next reviewing level. (*See* Handbook section 3.5.)

The review begins at the local academic unit. Local academic unit guidelines provide unit or college-specific articulations of university-wide criteria based on the professional discipline, field or interdisciplinary area and describe local procedures and processes used for promotion and tenure. The guidelines must be consistent with the university's criteria and procedures. (*See* Handbook sections 3.4.2, 3.4.3.)

The Faculty Handbook states that each review level considers the method and care of application of the approved guidelines by lower levels and the disciplinary expertise of the local academic unit. This includes matters of stringency, consistency among candidates, and fairness, as well as the implications the decision may have at the college/school or university level. (*See* Handbook section 3.5.1.1.)

In addition, "[e]ach level of evaluation is substantive and judges the candidate on the merits according to the university's criteria and the guidelines of that level of review." (*See* Handbook section 3.5.1.1.) In addition to considering the method and care of application of the approved standards by the lower level unit(s), the UBPT is charged with conducting a substantive review on the merits that applies university-wide standards and criteria for tenure and promotion. (*See* Handbook sections 3.5.6.1.) Therefore, the UBPT members may use their own competence and experience to evaluate a candidate's application, to assess the application of standards by the lower level, and to review independently the substantive merits of a candidate's teaching, scholarship, and service. (*See* Handbook section 3.5.6.1.)

Finally, the recommendation of the UBPT is forwarded to the provost. The Faculty Handbook states that "[o]nly in rare instances and for compelling reasons will the provost overturn a promotion or tenure recommendation made by the UBPT." (*See* Handbook section 3.5.6.3.)

## B. Procedural Background and Analysis of Appeal Arguments.

Your appeal is based on all three grounds in section 5.1.2.3 of the Faculty Handbook:

(1) The decision violated academic freedom.

(2) The evaluation of the candidate deviated from procedures in the Faculty Handbook or in college or local academic unit guidelines, and the deviation was material to the final decision.

2

Calvente-DePaul 021843

(3) The decision was the result of discriminatory practices prohibited by university policies or applicable federal, state or local laws.

(September 11, 2019 Calvente Memorandum to Appeals Board, p. 2.)

In accordance with section 5.1.1.3 of the Faculty Handbook, the Appeals Board conducted a preliminary review of the allegations. On ground (1), violation of academic freedom, the Appeals Board found that the allegations in your appeal, if substantiated, would not support a claim for violation of academic freedom. The Appeals Board therefore determined it would not proceed with investigation of this ground for appeal. (*See* Memorandum: Preliminary Review of Dr. Lisa B.Y. Calvente Appeal of Tenure and Promotion, September 27, 2019.) I affirm and accept this recommendation and decision for all of the reasons stated by the Appeals Board.

The Appeals Board then proceeded with a full review of the remaining two grounds for appeal. On January 15, 2020, the Appeals Board submitted its report and recommendation (the "Faculty Appeals Board Report"). In the Faculty Appeals Board Report, the Appeals Board found your appeal failed to establish by a preponderance of the evidence that the decision was the result of discriminatory practices prohibited by university policies or applicable federal, state or local laws. (See Faculty Appeals Board Report, pp. 30-34.) The Appeals Board's review and analysis is thorough and complies with the requirements of the Faculty Handbook. I therefore accept the Appeals Board's conclusions on ground (3).

The Appeals Board found that the evaluation of the candidate deviated from procedures in the Faculty Handbook or in college or local academic unit guidelines, and the deviation was material to the final decision. The Appeals Board's conclusion is based on the following alleged procedural failings:

(1) Allegations Relating to the 2015 Formal Review (*see* Faculty Appeals Board Report, pp. 12-14 and section B.1 below).

(2) Allegations Relating to the Evaluation of Teaching in the 2017 Formal Review (*see* Faculty Appeals Board Report, pp. 14-18 and section B.1 below).

(3) Appellant's Allegations Regarding Evaluation of Service (*see* Faculty Appeals Board Report, pp. 18-30 and section B.2 below).

(4) Appellant's Allegations Regarding the Provost (*see* Faculty Appeals Board Report, pp. 4-6 and section B.3 below).

The Appeals Board's recommendation is based on what it incorrectly characterizes as procedural violations in the evaluation of teaching and service (items (1), (2), and (3)), and in the Interim Provost's decision to not accept the recommendation of the UBPT (item (4)).[2]

---

[2] The Appeals Board found that the evidence did not substantiate the remaining procedural violations alleged in your appeal. I accept the Appeals Board's findings and conclusions and will not address those rejected allegations. (*See* Faculty Appeals Board Report, pp. 6-12.)

3

Calvente-DePaul 021844

After reviewing the record, I cannot conclude that your promotion and tenure evaluation deviated from the procedures in the Faculty Handbook or college guidelines or that such deviation was material. The Appeals Board's findings appear to me to reflect their own evaluation of the application for tenure on the merits, rather than an assessment of whether the procedural requirements of the Faculty Handbook were followed. I disagree with the Appeals Board's conclusions that your application was not evaluated in accordance with the policies and procedures of the Faculty Handbook. The following discussion, although not exhaustive, sets out the general rationale for my conclusions.

1. *The Appeals Board's Substantive Disagreement with Teaching Evaluations During the 2015 and 2017 Probationary Reviews.*

The Appeals Board concluded that "the 2015 formal review initiated a pattern of College misrepresentation of student comments in teaching evaluations," (Faculty Appeals Board Report, p. 14), and that "the College placed undue weight upon the flawed 2017 formal review in its tenure evaluation." (Faculty Appeals Board Report, p. 17). Although the Appeals Board concludes that these perceived deficiencies in the formal probationary reviews were material to the negative tenure review, the tenure review documents themselves do not support the Appeals Board's conclusions. Accordingly, I find the Appeals Board's assessment unconvincing.

As a preliminary matter, section 5.1.2.3 of the Faculty Handbook is concerned with promotion and tenure review and does not authorize the Appeals Board's investigation into the substance of your probationary reviews.[3] At DePaul University, probationary reviews are not included in the dossier as a matter of course. (*See* Faculty Handbook section 3.6.1.) Although you may have nonetheless included them in your own dossier appendix, the college, the Acting Dean, the UBPT, and the Interim Provost prepared written reports on your application. These items, along with the candidate's statement and responses, are the primary operative documents in a promotion and tenure appeal.

In any event, I disagree with the Appeals Board's characterization and assertions about the probationary reviews and the promotion and tenure review. Most importantly, I disagree with its conclusion that the process materially deviated from the Faculty Handbook's requirements.

*First*, the Appeals Board's conclusion that the college engaged in a pattern of misrepresentation of student comments in teaching evaluations is belied by the College of Communication Recommendation for Tenure and Promotion to Associate Professor (the "College Report"). The College Report fully captures the crux of the debate about your teaching.

For example, the College Report is replete with positive quotes from peer reviewers and students, for example:

- "Given the willingness of many students to explore these challenging ideas and to confront horrific examples, I assessed the overall atmosphere of the class to be both open and safe." (College Report, p. 2.)

---

[3] A formal review that results in non-renewal may be appealed under section 5.1.2.1. Issues other than denial of promotion and tenure, dismissal, nonrenewal, and non-reappointment may be grieved under section 5.2.

4

- ". . . sometimes the conversations can be challenging and emotionally difficult. But Prof. Calvente maintained a cordial and agreement environment throughout the whole class period." (College Report, p. 2.)

- "Dr. Calvente always listened to the opinion of every student. She also maintained an enforcement of respect." (College Report, p. 2).

Further, the College Report also specifically mentions the concerning recurring themes in prior review periods, references your response to prior assessments in your "Appendixes to Tenure and Promotion Review Statement," and notes your opinion that your "teaching had been overly scrutinized." (College Report, p. 4.)

The College Report's description of the tenured faculty meeting demonstrates that the faculty grappled with and debated the issue of student concerns about feeling intimidated and/or uncomfortable in the classroom. (College Report, p. 12-14.) Some focused on improvement in recent evaluations, some argued that the positive comments outweighed the negative, some attributed the negative comments to discomfort with the subject matter, some focused on the fact of recurrence, and some argued that an invitational approach was more in line with Vincentian personalism. (College Report, p. 13.) Moreover, the College Report presented your position that the student comments could be attributed to the sensitive nature of the race-related conversations in the classroom and being a minority faculty teaching race content. (College Report, p. 13.) The College Report also reflected your belief, expressed to the Personnel Committee during your interview, that making students feel uncomfortable in class is protected academic speech and within your academic freedom rights. (College Report, p. 13.)

The Acting Dean's letter to the UBPT similarly contains a frank discussion of the issue of student discomfort, noting that the courses can be emotionally difficult for students, acknowledging that your approach to student concerns and discomfort works for some students and not others, and providing an example of an incident that resulted in complaints by both you and the students. (January 9, 2019 Acting Dean Letter to UBPT, pp. 1-3.) The Acting Dean did not "misrepresent" the student comments. To the contrary, she provided a concise summary of the critical issue:

> Again, I want to emphasize, for the majority of her students, Dr. Calvente provides a positive, and for some an extraordinary experience. She has made efforts to improve some aspects of her teaching. To be an "excellent" teacher at an institution such as DePaul, however, requires a commitment and an effort to try to reach all students—even those who may (possibly unfairly) view you or your course content negatively. This is the conundrum of the case.

(January 9, 2019 Acting Dean Letter to UBPT, p. 4.)

Similarly, the UBPT Report reflects a close 4-3 split among its members regarding the impact of the negative student comments. Some members felt the negative comments were from "a very small minority" and noticed "significant improvement in the recent years." (UBPT Report, p. 2.)

Confidential

Calvente-DePaul 021846

Other members acknowledged that while the comments were from "a small minority" of students, the impact was "severe" and justified a rating short of "excellent". (UBPT Report, p. 2.)

Simply put, the dossier shows full transparency, context, and ample discussion around the issue of student comments in teaching evaluations. These types of discussions and the application of sound academic judgment, informed by experience, are foundational to the tenure review process. It is through these debates – at every level – that the university determines whether or not there is any reasonable doubt about the faculty member's qualifications and continued capacity to contribute. Accordingly, the Appeals Board has no basis for its conclusion that your 2015 formal review initiated a pattern of misrepresentation that precluded a fair and systematic evaluation. (Faculty Appeals Board Report, p. 14.)

*Second*, the Appeals Board states that the college placed undue weight on an allegedly flawed statistic from your 2017 formal review. Once again, the Appeals Board's conclusions are not borne out by the underlying dossier reports. The Appeals Board makes much of the alleged failings of this "55 percent statistic" and its reference in the January 9, 2019 Acting Dean Letter to UBPT, but it fails to show that the college placed any – much less "undue" – weight on this statistic in its recommendation against tenure. The specific statistic appears nowhere in the College Report. The reference in the Acting Dean's letter makes a single mention of the 2017 formal review, followed by a reference to your own calculation of student complaints by students. (January 9, 2019 Acting Dean Letter to UBPT, p. 3.)

As already outlined above, the record reflects that your student evaluations were largely positive, but that the college, the Acting Dean, and the UBPT were all, to varying degrees, concerned with recurring presence of some student complaints about feeling intimidated and/or uncomfortable in the classroom and with whether you successfully responded to and addressed these concerns. Indeed, regardless of percentages, the College Report notes that "Lisa is the only faculty member in the College whose evaluations and student reports feature these recurring comments." (College Report, p. 13.)

*Third*, even if the college, the Acting Dean, and/or the UBPT misunderstood the volume and severity of student concerns about feeling intimidated and/or uncomfortable in the classroom, I see no evidence that such a misunderstanding or misstatement, in and of itself, would constitute a material procedural violation.

The record reflects a holistic review of your teaching, which took into account more than just the student concerns about feeling intimidated and/or uncomfortable in the classroom. The College Report also highlighted other areas requiring improvement, including concerns about clarity in assignments and assessments of learning outcomes, time management, use of textbooks/readings, and incorporation of visual aids and multiple media. (College Report, pp. 3-4.) The College Report acknowledged improvement in some of these areas. (College Report, pp. 3-4.) However, the College Report's description of the faculty meeting reflected general concern among the tenured faculty that you resisted developmental recommendations. For example:

6

- "There was an overarching concern among many faculty members that Lisa categorically dismisses constructive teaching recommendations from her peers and students' comments."

- "[S]ome long-standing issues raised by students and the tenured faculty's suggestions throughout her time at DePaul (e.g., excessive volume of assigned readings, inadequate efforts to accommodate students' different learning styles) remain ignored, thereby negatively impacting student learning experiences."

(College Report, pp. 14-15.)

Against this backdrop, the Appeals Board has no authority to substitute its own interpretation of the meaning and weight that should be attributed to the various factors that go into teaching evaluations. Student feedback is part of the process (*see* Handbook section 3.6.2); how much weight to give it is well within the purview of the reviewing faculty. The parameters of the debate about the quality of your teaching are quite clear and the record shows that the reviewing faculty at every level tackled the issue directly, with valid points made on both sides of the argument. Indeed, this was a close question of a "Very Good" vs "Excellent" teaching rating. That the Appeals Board members, had they been voting faculty reviewers during the original promotion and tenure review, would have reached a different conclusion from the college or the Acting Dean or three of the seven UBPT members or the Interim Provost is beside the point. The only question to be answered is whether the Faculty Handbook's promotion and tenure review procedures were followed. On this record, I cannot accept the Appeals Board's findings and conclusions that there were material procedural deviations in the evaluation of your teaching.

   *2. The Appeals Board's Disagreement with Service Evaluations During the Probationary Period.*

The Appeals Board concluded that your "service was unfairly evaluated at multiple points" during your probationary period and that your college failed to provide "clear and consistent guidance regarding service in formal reviews." (Faculty Appeals Board Report, p. 30.) In support of this conclusion, the Appeals Board quotes extensively from probationary review reports and parses them for purported ambiguities and inconsistencies, regardless of context. I find the Appeals Board's assessment to be both unconvincing and the product of its own evaluation of the service record.

*First*, the Appeals Board misstates the record by asserting that the decision to deny promotion and tenure was based on unsatisfactory service. (Faculty Appeals Board Report, p, 30.) To the contrary, the dossier materials clearly show that your service was evaluated as "Very Good". (College Report, cover page, p. 11; January 9, 2019 Acting Dean Letter to UBPT, pp. 5-6.)

*Second*, the Appeals Board's inappropriate substitution of its own judgment of your service record is highlighted in its own report. The Faculty Appeals Board Report shows that you received the formal probationary reviews required by the Faculty Handbook and that in these reviews you received consistent feedback regarding the need for greater service during the probationary period reviews.

7

- The 2015 formal review listed your service activities and rated you as making only fair to good progress toward tenure in this area. (Faculty Appeals Board Report, pp. 19-20.)

- The 2017 formal review reflected the Personnel Committee's assessment of your overall service record during your probationary period as "modest," while acknowledging that your record during that review period was "very good." (Faculty Appeals Board Report, pp. 19-20.)

- The 2017 formal review also reflected the disagreement of the tenured faculty with the Personnel Committee: "If Lisa is retained, the tenured faculty would need to see significant changes in her service as evidenced through a track record of substantial contributions to her unit and meaningful committee work at the college level. Greater volunteering for university service is recommended." (Faculty Appeals Board Report, p. 22.)

Notwithstanding consistent formal reviews reflecting overall dissatisfaction with your progress toward an excellent service record, the Appeals Board nonetheless embarked on a pedantic search for inconsistencies in word choice, for contradictory statements in documents other than probationary reviews, for evidence of the college informing you exactly what service to perform, and for evidence of contradictions when such specific guidance was, in fact, provided. (Faculty Appeals Board Report, pp. 22-27.)

Setting aside for the moment the fact that the Appeals Board's charge is to review the promotion and tenure review process only, not the entirety of your probationary period, the Appeals Board has not persuaded me that you were unaware of the substance of the concerns surrounding the sufficiency of your service activities or that your service record was, in their judgment, unfairly rated as "Very Good" in the College Report. The Appeals Board points to no evidence that the college, Acting Dean, UBPT, or Interim Provost failed to review your service record as required under the Faculty Handbook. To the contrary, the formal reviews demonstrate that the college's consistent assessment during your probationary period was that more – quantitative and qualitative – service was expected for tenure. During the tenure review, reviewers debated about the sufficiency of the record reflected in your application. That the Appeals Board disagreed with this assessment on the merits or that they would have mentored you differently is of no significance in the appeal process. Their charge was limited to a review of whether the evaluation deviated from the procedures in the Faculty Handbook or college guidelines and whether any such deviation was material.

*Third,* the promotion and tenure review record itself reflects an accurate recounting of your service history and the ongoing reservations of the tenured faculty that sufficiently explained the rating of "Very Good" rather than "Excellent".

- The College Report comprehensively outlines your service record. The Personnel Committee's narrative is complimentary and thorough, going so far as to note even your mere attendance at a faculty meeting to discuss campus security concerns. (College Report, p. 10.)

8

- The College Report also identifies the concerns of the tenured faculty that your service record reflected standard faculty expectations and not enough long-term, substantive activities, that your more recent service was beginning to be disproportionately weighted outside the college, and that some of your claimed service was not properly documented. (College Report, pp. 18-19.0

- The Acting Dean's letter similarly acknowledged a record of service at the program, college, and university levels, but noted that the majority was in ad hoc, short-term capacities rather than more substantive, long-term committee work. (January 9, 2019 Acting Dean Letter to UBPT, p. 5.)

- The UBPT itself was divided as to your service record, finding it sufficient yet simultaneously encouraging you to further build your service record in all three levels. (UBPT Report, p. 3.)

In short, the service record presented in your promotion and tenure application was fully evaluated and debated as required by the Faculty Handbook. Evolving recommendations over the course of your probationary period and differing opinions amongst the reviewing faculty does not mean that the process – during the probationary period or the tenure review – was unfair, inconsistent, or procedurally flawed. Rather, I would argue that it demonstrates that the process functioned as it should. That is, each review was responsive to the record before it and subsequent reviews built upon previous reviews to encourage further improvement. Indeed, your service rating did, in fact, improve from "Fair to Good" to "Very Good," which further undermines the Appeals Board's conclusion that alleged inconsistent or insufficient guidance as to service expectations amounted to materially unfair evaluations.

3.   *The Appeals Board's Conclusion That the Interim Provost Assigned Greater Weight to College Concerns than to University-Wide Criteria.*

In its report, the Appeals Board concludes that in rejecting the recommendation of the UBPT, the Interim Provost assigned greater weight to college concerns than to university-wide criteria and that this constituted a procedural violation. (Faculty Appeals Board Report, p. 6.)  I am not persuaded by the Appeals Board's reasoning.

The basis for the Appeals Board's conclusion is difficult to discern in its report.  After first concluding that the Interim Provost had reiterated her agreement with the UBPT minority members and had acted in good faith and objectively, the Appeals Board then leaps to the unsupported conclusion that the Interim Provost assigned greater weight to college concerns than university-wide criteria. (Faculty Appeals Board Report, pp. 4-5.)  Indeed, the Appeals Board appears to summarily discount the explanation in the Interim Provost's letter in which she notes that the overwhelming majority of the college faculty and the Acting Dean believed that the requirements for promotion and tenure had not been met, that the members of the UBPT were sharply divided themselves (4 to 3) on the question, and that the Faculty Handbook requires that "the university should have no reasonable doubt about the faculty member's demonstrated qualifications and continued capacity to contribute to DePaul's distinctive goals and academic mission." (June 10, 2019 Interim Provost Letter to Dr. Calvente, p. 1.)

9

Calvente-DePaul 021850

Four of the seven UBPT members reviewed the promotion and tenure application and were satisfied that the requirements at every level were met. That the Interim Provost was not in the end similarly satisfied is not, in and of itself, evidence of an over-emphasis on college concerns. Yet the Appeals Board simply assumes college-level concerns predominated. Without justification, it summarily dismisses the Interim Provost's written explanation that the record before her – the dossier, your response to the college report, and the UBPT hearing – conflicted with the Faculty Handbook's mandate that the university have "no reasonable doubt" before granting tenure. (June 10, 2019 Interim Provost Letter to Dr. Calvente, p. 1.) I am unwilling to accept the Appeals Board's assumptions on this point.

## C.    Conclusion

It is not enough to make an argument that tenure could have been granted, especially when, as here, the record is generally commendable. Rather, the Faculty Handbook requires that you establish that your promotion and tenure evaluation deviated from procedures in the Faculty Handbook or in college or local academic unit guidelines, and the deviation was material to the final decision. As summarized above, I am not persuaded by the Appeals Board's findings of material procedural violations in the review of your promotion and tenure application. Accordingly, I do not accept the findings and recommendations of the Appeals Board.

I am sorry that your application for promotion and tenure was not granted, but I do wish you every success in the years ahead.


With every good wish,


A. Gabriel Esteban, Ph.D.

Cc:  Salma Ghanem, Alexandra Murphy

10

Calvente-DePaul 021851