UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LISA CALVENTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 1:20-cv-03366 |
| v. | ) | |
| | ) | Judge John Robert Blakey |
| SALMA GHANEM and DEPAUL | ) | |
| UNIVERSITY, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1

Defendants, Salma Ghanem ("Dr. Ghanem") and DePaul University ("DePaul" or "University"), by their attorneys, Cozen O'Connor, and pursuant to Local Rule 56.1(a)(3), submit this Response to Plaintiff's Statement of Undisputed Material Facts ("Plaintiff's SOF")[1] in support of her Partial Motion for Summary Judgment.

### Facts

1.      Dr. Calvente is an American of African, Latinx, and Asian descent. (Calvente Dec. ¶1, copy attached as Exhibit A.)

**RESPONSE: Defendants do not dispute Plaintiff's SOF ¶1.**

2.      Dr. Calvente's areas of research are the black diaspora, performance studies, and cultural studies with a particular interest in how performance and media ethnography can be used

---

[1] For ease of reference, Defendants cite to the various Local Rule 56.1 statements filed by the parties as follows:
- Dkt. No. 47, Defendants' Combined Rule 56.1(a)(3) Statement of Undisputed Material Fact in support of their Combined Motion for Summary Judgment ("Defendants' SOF");
- Dkt. No. 84, Plaintiff's Response to Defendants' Statement of Material Fact Pursuant to Local Rule 56.1(b)(2) ("Plaintiff's RSOF"); and,
- Dkt. No. 89, Plaintiff's Statement of Material Fact Pursuant to Local Rule 56.1 in support of her Partial Motion for Summary Judgment("Plaintiff's SOF").

to interrogate discursive formations of racism, classism, and hetero/sexism in order to generate possibilities of belonging and social justice. (Answer at ¶8, copy attached as Exhibit B.)

**RESPONSE: Defendants do not dispute Plaintiff's SOF ¶2.**

3.      Dr. Calvente is a former tenure–track professor at DePaul University ("DePaul" or the "University") in the College of Communication (the "College"). (Calvente Dec. ¶¶4, 6; Answer at 1.)

**RESPONSE: Defendants do not dispute Plaintiff's SOF ¶3.**

4.      Dr. Calvente's employment at DePaul ended at the end of the 2019/2020 academic year, following the denial of her application for tenure during the 2018/2019 academic year and the conclusion of her terminal contract. (Calvente Dec. ¶4.)

**RESPONSE: Defendants do not dispute Plaintiff's SOF ¶4.**

5.      Between August 1, 2020 and June 30, 2021, Dr. Calvente was unemployed. (Calvente Dec ¶5.)

**RESPONSE: Defendants do not dispute Plaintiff's SOF ¶5.**

6.      Dr. Calvente is currently a tenure–track assistant professor at the University of North Carolina at Chapel Hill ("UNC"). (Calvente Dec ¶2.)

**RESPONSE: Although immaterial, Defendants do not dispute Plaintiff's SOF ¶6.**

7.      Members of the academy see UNC as more prestigious than DePaul University ("DePaul" or the "University"), and UNC is a Research 1 University as opposed to DePaul, which is a Research 2 University. (Zaeske Dep. 66:10–14, 70:4–71:11, 93:14–95:4, 186:6–13, 207:10–12, copy attached as Exhibit G; Calvente Dep. 307:4–310:11, copy attached as Exhibit C.)

**RESPONSE: Defendants do not dispute that "UNC is a Research 1 University and that DePaul is a Research 2 University" according to Carnegie Classifications, which are**

based on research expenditures, the number of research Ph.D.'s conferred and number of non-faculty research staff. (Dkt. No. 60-2, Zaeske Dep. at 97.) However, these facts should be disregarded as immaterial. The remaining statements in Plaintiff's SOF ¶ 7 should be disregarded as improper under Local Rule 56.1 because they are immaterial, conclusory, vague, and improper argument *See De v. City of Chicago*, 912 F. Supp. 2d 709, 714 (N.D. Ill. 2012) (collecting cases) (disregarding statements that are vague, argumentative, immaterial, or conclusory for failing to comply with Local Rule 56.1), and because these statements are impermissibly speculative, unreliable, and not relevant under FRE 702 for the reasons set forth in Dkt. No. 60, Defendants' Motion to Strike Dr. Zaeske's Report and Testimony.

8.      In order to get hired into a tenure track position at a Research 1 University like the

UNC, you must show that your chances of earning tenure are very high. (Zaeske Dep. 82:17–

83:3, 83:14–84:1, 186:14–190:8, 192:1–193:14.)

**RESPONSE: Plaintiff's SOF ¶8 should be disregarded as improper under Local Rule 56.1 because it is immaterial, conclusory, vague, and improper argument, s*ee De*, 912 F. Supp. 2d at 714, and because these statements are impermissibly speculative, unreliable, and not relevant under FRE 702 for the reasons set forth in Dkt. No. 60, Defendants' Motion to Strike Dr. Zaeske's Report and Testimony.**

9.      That Dr. Calvente could earn a tenure–track position at UNC after being denied

tenure at DePaul makes DePaul's decision to deny tenure to Dr. Calvente highly questionable.

(Zaekse Dep. 71:2–22.)

**RESPONSE: Plaintiff's SOF ¶9 should be disregarded as improper under Local Rule 56.1 because it is immaterial, conclusory, vague, and improper argument, s*ee De*, 912 F. Supp. 2d at 714, and because these statements are impermissibly speculative, unreliable, and not relevant under FRE 702 for the reasons set forth in Dkt. No. 60, Defendants' Motion to Strike Dr. Zaeske's Report and Testimony.**

10.      Salma Ghanem ("Dr Ghanem") was the Dean of the College from August 2014

through October 2018, when she was appointed acting provost. (Ghanem Dep. at 16:16–18,

29:9–10, copy attached as Exhibit D.)

**RESPONSE: Defendants do not dispute Plaintiff's SOF ¶10.**

11.     Tenure track faculty cannot be terminated at will; rather, they can only be terminated in accordance with the DePaul Faculty Handbook (the "Handbook"). (Ghanem Dep. 11:24–12:21.)

**RESPONSE: Although the cited evidence does not support the first clause of Plaintiff's SOF ¶11, Defendants do not dispute that tenure track faculty are not at-will employees, and further do not dispute that tenure track faculty can be terminated in accordance with the DePaul Faculty Handbook.**

12.     In the case of tenure–track but untenured faculty they may be involuntarily terminated for failing to (i) demonstrate that they are making adequate progress towards tenure following a pre–tenure review, or (ii) earn tenure. (First Rinehart Dec. ¶¶3, 6, copy attached as Exhibit E, and Exhibit 1 to the First Rinehart Declaration at §§3.2, §3.3.1.1 (Bates labeled Calvente–DePaul 000028, 30).)

**RESPONSE: Although the cited evidence does not precisely support the statements in Plaintiff's SOF ¶12, Defendants do not dispute that two grounds for not renewing a tenure-track but untenured faculty member's contract includes failing to demonstrate that they are making adequate progress towards tenure following a faculty vote conducted in connection with a pre-tenure review, or failing to earn tenure. (*See also* Plaintiff's RSOF at ¶12) (admitting that the pre-tenure review process results in a vote on progress toward tenure and renewal); and Defendants' Response to Plaintiff's SOF ¶ 4, above (admitting Plaintiff was terminated following tenure denial).)**

13.     A candidate may be evaluated as not making adequate progress towards tenure during a formal or informal pre–tenure review, with informal reviews occurring yearly and formal reviews occurring every two years. (First Rinehart Dec. ¶¶3, 6 and Exhibit 1 to the First Rinehart Declaration at §§3.3.1.1, 3.3.1.2 (Bates labeled Calvente–DePaul 000030–31).)

**RESPONSE: Although the cited evidence does not precisely support the statements in Plaintiff's SOF ¶13, Defendants do not dispute that the cited materials establish that during formal reviews and informal reviews, a candidate is evaluated on progress towards tenure, with formal reviews occurring "no less often than every two years," and informal reviews occurring "in years in which a formal review is not conducted." (Plaintiff's RSOF at ¶12; Dkt. No. 50-2, Defendants' SOF at Tab D, Ex. 1, p. 00031 at ¶3.3.1.2.)**

4

14.     At DePaul, the process for obtaining tenure differs slightly depending on the structure of a candidate's local academic unit. (First Rinehart Dec. ¶¶3, 6 and Exhibit 1 to the First Rinehart Declaration at §§3.5.1.1(a), §3.5.3, 3.5.4, 3.5.4.2, 3.5.4.3, 3.5.5, 3.5.5.2, 3.5.5.3, 3.5.5.4, 3.5.5.5, 3.5.5.6, 3.5.6.1, 3.5.6.3 (Bates labeled Calvente–DePaul 000036–36, 39–43).)

**RESPONSE: Defendants do not dispute that the process for obtaining tenure may involve more or fewer levels of review depending upon the structure of a candidate's local academic structure, but disputes the characterization "differs slightly."** (*See also*, **Plaintiff's RSOF at ¶16 (admitting to the levels of review in units without departments)); and (Plaintiff's RSOF at ¶154 (admitting sentences 1-6 which describe the levels of review in a unit with departments)).**

15.     In the College, which does not have separate departments, the first step in the tenure process is an evaluation of the candidate's file by the personnel committee (to which the candidate may respond) and then the tenured faculty. (First Rinehart Dec. ¶¶3, 6 and Exhibit 1 to the First Rinehart Declaration at §§3.5.1.1(a), §3.5.3, 3.5.4, 3.5.4.2, 3.5.4.3, 3.5.5, 3.5.5.2, 3.5.5.3, 3.5.5.4, 3.5.5.5, 3.5.5.6, 3.5.6.1, 3.5.6.3 (Bates labeled Calvente–DePaul 000036–36, 39–43).) After the tenured faculty vote, the dean makes a separate recommendation as to whether the candidate should receive tenure. (First Rinehart Dec. ¶¶3, 6 and Exhibit 1 to the First Rinehart Declaration at §§3.5.1.1(a), §3.5.3, 3.5.4, 3.5.4.2, 3.5.4.3, 3.5.5, 3.5.5.2, 3.5.5.3, 3.5.5.4, 3.5.5.5, 3.5.5.6, 3.5.6.1, 3.5.6.3 (Bates labeled Calvente–DePaul 000036–36, 39–43).) After the faculty votes and the dean makes her recommendation, the candidate's file—including her complete dossier, the vote of the tenured faculty, the response by the candidate, and the recommendation of the dean—is sent to the University Board on Promotion and Tenure (the "UBPT"). (First Rinehart Dec. ¶¶3, 6 and Exhibit 1 to the First Rinehart Declaration at §§3.5.1.1(a), §3.5.3, 3.5.4, 3.5.4.2, 3.5.4.3, 3.5.5, 3.5.5.2, 3.5.5.3, 3.5.5.4, 3.5.5.5, 3.5.5.6, 3.5.6.1, 3.5.6.3 (Bates labeled Calvente–DePaul 000036–36, 39–43).)

**RESPONSE: Defendants do not dispute that Plaintiff has described some components of the review process for obtaining tenure in the College. (*See also* Plaintiff's RSOF at ¶¶14-17, the first sentence of ¶18, and ¶¶21-22) (admitting to fuller description of tenure process).)**

16.     In an academic unit that has separate departments (for example, the College of Science and Health), the tenured faculty of the department first evaluates the candidate's file and the candidate may respond to this evaluation. (First Rinehart Dec. ¶¶3, 6 and Exhibit 1 to the First Rinehart Declaration at §§3.5.1.1(a), §3.5.3, 3.5.4, 3.5.4.2, 3.5.4.3, 3.5.5, 3.5.5.2, 3.5.5.3, 3.5.5.4, 3.5.5.5, 3.5.5.6, 3.5.6.1, 3.5.6.3 (Bates labeled Calvente–DePaul 000036–36, 39–43).) Following the department's evaluation, the department chair makes a recommendation as to whether the candidate should receive tenure. (First Rinehart Dec. ¶¶3, 6 and Exhibit 1 to the First Rinehart Declaration at §§3.5.1.1(a), §3.5.3, 3.5.4, 3.5.4.2, 3.5.4.3, 3.5.5, 3.5.5.2, 3.5.5.3, 3.5.5.4, 3.5.5.6, 3.5.6.1, 3.5.6.3 (Bates labeled Calvente–DePaul 000036–36, 39–43).) Next, the tenured faculty of the college (or a separate committee thereof) evaluates the file and the candidate may respond to this evaluation. (First Rinehart Dec. ¶¶3, 6 and Exhibit 1 to the First Rinehart Declaration at §§3.5.1.1(a), §3.5.3, 3.5.4, 3.5.4.2, 3.5.4.3, 3.5.5, 3.5.5.2, 3.5.5.3, 3.5.5.4, 3.5.5.5, 3.5.5.6, 3.5.6.1, 3.5.6.3 (Bates labeled Calvente–DePaul 000036–36, 39–43).) The dean of the college then makes a recommendation as to whether the candidate should receive tenure. (First Rinehart Dec. ¶¶3, 6 and Exhibit 1 to the First Rinehart Declaration at §§3.5.1.1(a), §3.5.3, 3.5.4, 3.5.4.2, 3.5.4.3, 3.5.5, 3.5.5.2, 3.5.5.3, 3.5.5.4, 3.5.5.5, 3.5.5.6, 3.5.6.1, 3.5.6.3 (Bates labeled Calvente–DePaul 000036–36, 39–43).) After these processes, the candidate's file— including his complete dossier, the votes of the faculty, and the recommendation of both the department chair and of the dean—go to the UBPT. (First Rinehart Dec. ¶¶3, 6 and Exhibit 1 to the First Rinehart Declaration at §§3.5.1.1(a), §3.5.3, 3.5.4, 3.5.4.2, 3.5.4.3, 3.5.5, 3.5.5.2,

3.5.5.3, 3.5.5.4, 3.5.5.5, 3.5.5.6, 3.5.6.1, 3.5.6.3 (Bates labeled Calvente–DePaul 000036–36, 39–43).)

**RESPONSE: Defendants do not dispute that Plaintiff has identified some components of the levels of review involved in the tenure process in local academic units with departments.**

17.     Members of the UBPT are appointed by Faculty Council, which is the unit that represents the voice of faculty at DePaul with respect to shared governance. (Ghanem Dep. 58:18–60:5.)

**RESPONSE: Defendants do not dispute Plaintiff's SOF ¶17.**

18.     Shared governance is a process where faculty input is taken in terms of different decisions at the University. (Ghanem Dep. 60:6–10.)

**RESPONSE: Defendants do not dispute Plaintiff's SOF ¶18.**

19.     Principles of shared governance acknowledge that faculty has a significant role, together with the administration, in the operation of the University, including the appointment, tenuring, and promotion of faculty. (First Rinehart Dec. ¶¶3, 6 and Exhibit 1 to the First Rinehart Declaration at §1.2.1(3) (Bates labeled Calvente–DePaul 000003).)

**RESPONSE: Although the cited evidence does not precisely support the statement in Plaintiff's SOF ¶19, Defendants do not dispute that Section 1.2.1(3) of the Faculty Handbook, which is cited by Plaintiff, states that "faculty is vested with primary governance responsibility of academic and scholarly activities and faculty personnel matter within the University, including . . . standards and procedures concerning faculty promotion, tenure, appointments, retention, and performance," and that Section 1.2 states that "in order to carry out these responsibilities, the faculty will work closely with the academic administrators and the officers of the University." (Dkt. No. 50-2, Defendants' SOF at Tab D, Ex. 1, p. 00003 at ¶1.2.)**

20.     DePaul's system of faculty evaluation "relies heavily on the view of faculty. Exercising professional judgment, experienced faculty evaluate the work of their colleagues for

renewal, promotion, and tenure." (First Rinehart Dec. ¶¶3,6 and Exhibit 1 to the First Rinehart Declaration at §3.1 (Bates labeled Calvente–DePaul 000028).)

**RESPONSE: Defendants do not dispute Plaintiff's SOF ¶20.**

21.     While the provost has a faculty appointment, she is not considered to be faculty for purposes of shared governance. (Ghanem Dep. 60:11–14.)

**RESPONSE:   Defendants do not dispute that "the provost has a faculty appointment" and do not dispute that she "is not considered to be faculty." (Dkt. No. 55-1, Defendants' SOF at Tab F, Ghanem Dep. at 60:11-14.) Although immaterial, Defendants dispute that the clause "for the purposes of shared governance" as unsupported by the cited evidence and it should therefore be disregarded for failure to comply with Local Rule 56.1.**

22.     Dr. Ghanem has never lost confidence in any of the members of the UBPT. (Ghanem Dep. 55:23–56:8.)

**RESPONSE: Defendants do not dispute Plaintiff's SOF ¶22.**

23.     The UBPT's recommendation is entitled to more weight than any recommendation that comes out of a local academic unit, and Dr. Ghanem has acknowledged this fact. (Ghanem Dep. 50:9–51:3.)

**RESPONSE: Defendants do not dispute that Dr. Ghanem testified that the UBPT "has more weight" or that it "carries a little bit more weight" than the recommendations from the College "because" the Handbook states "that only in rare instances and for compelling reasons will the provost overturn a promotion or tenure recommendation made by UBPT." (Dkt. No. 55-1, Defendants' SOF at Tab F, Ghanem Dep. at 48:15-51:10.)**

24.     The UBPT only evaluates a candidate for tenure once. (First Rinehart Dec. ¶¶3, 6 and Exhibit 1 to the First Rinehart Declaration at §3.5.6.1 (Bates labeled Calvente–DePaul 000042–43).) This is in contrast to pre–tenure reviews at tenure–track faculty member's local academic unit, which occur multiple times before a candidate is evaluated for tenure. (First Rinehart Dec. ¶¶3, 6 and Exhibit 1 to the First Rinehart Declaration at §§3.3.1.1, 3.3.1.2 (Bates labeled Calvente–DePaul 000030–31).)

**RESPONSE: Although immaterial, the statements in Plaintiff's SOF ¶24 that the "UBPT only evaluates a candidate for tenure once," and "pre-tenure reviews at tenure-track faculty member's local academic unit . . . occur multiple times before a candidate is evaluated for tenure," are not supported by the cited evidence and the statements should therefore be disregarded for failure to comply with Local Rule 56.1. Further, while Defendants do not dispute the UBPT is not involved in formal or informal probationary tenure-line reviews, and thus only reviews a candidate for tenure one time, local academic units also only review a candidate for tenure one time. (*See* Plaintiff's RSOF at ¶¶12-13) (admitting local unit's role in conducting pre-tenure reviews) and (Plaintiff's RSOF at ¶¶14-17) (admitting local unit's role in conducting tenure review).) Therefore, Defendants dispute that Plaintiff's comparison between probationary reviews and tenure reviews is material or supported by the cited evidence.**

25.     DePaul's policies are very clear that the provost should overturn the UBPT's recommendation only in rare instances and for compelling reasons. (First Rinehart Dec. ¶¶3, 6 and Exhibit 1 to the First Rinehart Declaration at §3.5.6.3 (Bates labeled Calvente–DePaul 000043); Answer at ¶10; Ghanem Dep. 48:20–50:18.)

**RESPONSE: Defendants do not dispute that Section 3.5.6.2 of the Faculty Handbook provides that the Provost may overturn the UBPT's recommendation only in rare instances and for compelling reasons. Defendants state further that phrase "are very clear," is improper argument for inclusion in a 56.1 statement. *See De*, 912 F. Supp. 2d at 714.**

26.     That the provost should overturn the UBPT's recommendation only in rare instances and for compelling reasons means that the provost may not simply reject the UBPT's recommendation because she disagrees with it. (Ghanem Dep. 57:2–58:8 and Exhibit 18 to Ghanem Dep. at page 2 (Bates labeled LC004069).) Rather, to overturn the recommendation of the UBPT—which represents voice of the faculty—the Provost should find that the UBPT recommendation was manifestly one that was groundless. (*Id.*) In other words, to overturn the UBPT, the provost must find that (i) doubt existed where the Board found none, or (ii) where the Board expressed its doubt, the Provost found that the Board's reasons for doubt were completely unfounded. (*Id.*)

**RESPONSE: Plaintiff's SOF ¶26 should be disregarded as improper under Local Rule 56.1 because these statements are immaterial, unsupported by the record, conclusory, vague, and improper argument.** *See De*, **912 F. Supp. 2d at 714. Specifically, LC0004069 is an end-of year-report from members of the 2019-2020 UBPT dated September 23, 2020 (Plaintiff's RSOF at pp. 100-108, also marked LC004068-4076 (hereinafter "2020 Memo").) This 2020 Memo was authored by a UBPT distinct in composition from the 2018-2019 UBPT that reviewed Plaintiff's tenure case and was issued after Plaintiff had already left DePaul.** (*Id*.) **The 2020 Memo addressed among other things, the 2019-2020 UBPT members' interpretation of the Faculty Handbook provision regarding the Provost's authority to reject a UBPT's recommendations on tenure "in rare circumstances and for compelling reasons." (***Id*. **at pp. LC004069-4070.) There is no record evidence that any portion of this report was ever adopted, and in fact, Dr. Ghanem testified to her disagreement with it.** (**Dkt. No. 55-1, Defendants' SOF at Tab F, Ghanem Dep. at 61:4-64:16.) Even so, the document itself describes its interpretation of "manifestly groundless" as circumstances where "doubt existed where the Board found none, or where the Board expressed its doubt, the Provost found the Board's reasons(s) for doubt were completely unfounded." (2020 Memo at p. LC004069.) Notably, here, Dr. Ghanem stated in her letter denying Plaintiff tenure that "before granting tenure, the university should have** *no reasonable doubt* **about the faculty member's demonstrated qualifications and continued capacity to contribute to DePaul's distinctive goals," and that doubt existed for Dr. Ghanem because the "slim majority voting in favor of [her] application at the University level, [did] not, in [Dr. Ghanem's] view, sufficiently answer the significant concerns raised by Plaintiff's colleagues in Communication." (***See* **Plaintiff's RSOF at ¶ 130) (admitting to contents of Dr. Ghanem's tenure denial letter).)**

**Separately, however, these statements and the document should be disregarded because Plaintiff improperly obtained the document outside of the discovery process.[2]** *See Glynn v. EDO Corp.*, **2010 WL 3294347 at \*5 (D. Md., Aug. 20, 2010) (holding that it is "an improper litigation tactic" to obtain non-public internal business documents from an employee of an opposing party, and sanctioning plaintiff for acquiring such information from a current employee of defendant rather than through normal discovery channels);** *Chamberlain Group, Inc. v. Lear Corp.*, **270 F.R.D. 392 (N.D. Ill. 2010) (citing** *Glynn* **at \*5). Plaintiff's SOF ¶ 26 should be stricken for this independent reason.**

27.    Before granting tenure, the university should have no reasonable doubt about the faculty member's demonstrated qualifications and continued capacity to contribute to DePaul's distinctive goals and academic mission. (Ghanem Dep. 44:4–45:18; First Rinehart Dec. ¶¶3, 6 and Exhibit 1 to the First Rinehart Declaration at §§3.1, 3.3.1.3, 4.2 (Bates labeled Calvente–DePaul 000028, 31, 55).) Dr. Ghanem testified that she interpreted this language to mean that

---

[2]    Defendants put Plaintiff on notice of this improper litigation tactic at the time it became known to Defendants that Plaintiff had obtained the document. (Attached herein as Tab 1, Emails between counsel for Defendants and counsel for Plaintiff regarding 2020 Memo.)

there should be no question about the faculty member's demonstrated qualifications and continued capacity. (Ghanem Dep. 45:20–46:2.)

**RESPONSE: Defendants do not dispute Plaintiff's SOF ¶27.**

28. After Dr. Calvente was hired at the College, tenured faculty member ███████ ███ directed a so–called joke at Dr. Calvente where the punchline was the word "nigger." (Calvente Dep. 267:21–268:23.)

**RESPONSE: Defendants do not dispute that Plaintiff testified that in 2011, Dr. ███ made the joke referenced in Plaintiff's SOF ¶28. Defendants deny that this statement is material, however, because it is a stray remark made seven years prior to the tenure decision in her case, and Plaintiff has waived any argument based on this statement because she does not argue this statement as evidence of discriminatory or retaliatory intent in her summary judgment pleadings. (Plaintiff's RSOF at ¶147; Dkt. No. 87, Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment); _see also Cowan v. Glenbrook Sec. Services, Inc._, 123 F.3d 438, 444 (7th Cir. 1997).**

29. After Dr. Calvente was hired at the College, tenured faculty member ███████ ███ made a racist comment about communities of color in the south and west side of Chicago. (Calvente Dep. at 91:9–93:24, 108:10–19.) Notwithstanding the foregoing, Dr. ███ was identified as a peer reviewer for Dr. Calvente. (Calvente Dep. at 91:9–93:24, 108:10–19.)

**RESPONSE: Defendants do not dispute that Plaintiff testified that in academic year 2011-12, Dr. ███ made a comment about communities in the South and West side of Chicago, which Plaintiff immediately challenged as racially insensitive. (Plaintiff's RSOF at ¶148.) Defendants deny that this statement is material because it was a stray remark made six to seven years prior to the tenure decision in her case, and Plaintiff has waived any argument based on this statement because she does not argue this statement as evidence of discriminatory or retaliatory intent in her summary judgment pleadings. (_Id._; Dkt. No. 87, Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment); _Cowan_, 123 F.3d at 444.**

30. The College is small based on the size of its faculty. (Murphy Dep. at 40:20–41:1, copy attached as Exhibit K.) The faculty within the College are also generally collegial with each other. (Murphy Dep. 82:12–22.)

**RESPONSE: Defendants do not dispute Plaintiff's SOF ¶30, except that the first sentence does not fully reflect Dr. Murphy's testimony. Dr. Murphy testified that the College is a small college based on the "size of faculty and size of students." (*See* Plaintiff's RSOF at ¶5.)**

31.     In 2015, after the personnel committee in the College recommended that Dr. Calvente's contract not be renewed, but before the tenured faculty in the College voted on whether to recommend Dr. Calvente's contract be renewed, Dr. Calvente wrote a rebuttal to the personnel committee that stated that "[t]he "hostility" in my evaluations is the result of the structural racism and the normalization of whiteness within the academy that unfairly scrutinizes faculty of color, primarily women, wo do not reinforce the stands and norms of white (male) supremacy." (Exhibit No. 50 to Calvente Dep. at Bates label Calvente–DePaul 029085.)

**RESPONSE: Defendants do not dispute Plaintiff's SOF ¶31.**

32.     The tenured faculty at the College twice recommended that Dr. Calvente's contract not be renewed before Dr. Calvente applied for tenure: the tenured faculty recommended that Dr. Calvente's contract not be renewed in 2015 and the tenured faculty recommended that Dr. Calvente's contract not be renewed in 2017. (Exhibit No. 50 to Calvente Dep. at Bates label Calvente–DePaul 029086; Calvente Dep. 240:11–14.)

**RESPONSE: Defendants do not dispute Plaintiff's SOF ¶32.**

33.     After each occasion that the tenured faculty at the College recommended that Dr. Calvente's contract not be renewed, Dr. Ghanem renewed Dr. Calvente's contract. (Calvente Dep. 255:10–14, Ghanem Dep. 127:21–128:2.)

**RESPONSE: Defendants do not dispute Plaintiff's SOF ¶33.**

34.     After the first occasion where Dr. Ghanem renewed Dr. Calvente's contract, she said that Dr. Calvente was an extraordinary teacher, and she said that Dr. Calvente's receipt of a Woodrow Wilson fellowship was "a huge deal." (Calvente Dep. 221:14–222:10, 300:1–301:3.)

**RESPONSE: Defendants do not dispute Plaintiff's SOF ¶34.**

35.     In 2015, after the tenured faculty at the College recommended that Dr. Calvente's contract not be renewed, Dr. Calvente called DePaul's Office of Institutional Diversity and Equity ("OIDE") and raised an internal complaint of discrimination. (*E.g.,* Calvente Dep. at 225:7–15, 230:9–12.)

**RESPONSE: Defendants do not dispute Plaintiff's SOF ¶35.**

36.     OIDE is the organization tasked with investigating internal complaints of discrimination at DePaul. (Ghanem Dep. 72:24–73:4.)

**RESPONSE: Defendants do not dispute Plaintiff's SOF ¶36.**

37.     In investigating Dr. Calvente's internal complaint of discrimination, OIDE interviewed fifteen individuals, including ten members of the faculty of the College and each member of the personnel committee who recommended Dr. Calvente's contract not be renewed in calendar year 2015. (Diaz Declaration at Exhibit 1 (Bates labeled Calvente–DePaul 0006968), copy attached as Exhibit G.)

**RESPONSE: Defendants do not dispute Plaintiff's SOF ¶37.**

38.     After the second occasion where Dr. Ghanem renewed Dr. Calvente's contract, Dr. Calvente told Dr. Ghanem that she wanted to present another claim of discrimination with OIDE. (Calvente Dec. ¶8.) Ghanem told Dr. Calvente not to follow through with a complaint of discrimination to OIDE, that she should wait until after her tenure vote, and that the then–provost knew about her case. (Calvente Dep. 256:19–258:3, 262:7–20; Calvente Dec. ¶8.) Dr. Ghanem also told Dr. Calvente that she would be fine for tenure. (Calvente Dep. 300:1–22.)

**RESPONSE: Defendants do not dispute the first sentence of Plaintiff's SOF ¶38 or the statement in the second sentence that Dr. Ghanem told Plaintiff that the then-provost knew about her case. Defendants further admit that in response to Plaintiff crying and stating that she wanted to file another complaint but doing so was time–consuming, Dr. Ghanem told her she should wait to file a claim until after tenure. (*See* Plaintiff's RSOF at**

**¶74) (admitting relevant factual statements).) Defendants dispute that Dr. Ghanem told Plaintiff she would be fine for tenure.  Rather, Plaintiff testified that she told Dr. Ghanem she "surpassed the standards for tenure," and Dr. Ghanem did not disagree. (Dkt. No. 47-2, Defendants' SOF at Tab B, Calvente Dep. 300:1-301:13.)**

39.　　██████████llo was a white tenure track professor in the College who was recommended for non–renewal in calendar year 2017, and whose contract Dr. Ghanem decided not to renew before Dr. ██████ applied for tenure. (Ghanem Dep. 143:22–144:2, 163:1–3; Calvente Dec. ¶7.)

**RESPONSE: Defendants do not dispute Plaintiff's SOF ¶39.**

40.　　On or around October 10, 2018, Dr. Calvente and ██████ ██████ met with Dr. Ghanem in her office to discuss discrimination within the College. (Calvente Dep. 270:21–271:6; Ghanem Dep. 152:4–8.)

**RESPONSE: Defendants do not dispute Plaintiff's SOF ¶40.**

41.　　During the meeting Dr. ██████'s name came up. (Calvente Dep. 271:22–272:14.) Dr. Ghanem said that she did not want to discuss Dr. ██████'s situation because she felt that complaints about Dr. ██████ were a challenge to her authority as dean; however, Dr. Ghanem did let slip that she heard a rumor that she terminated Dr. ██████ so that she could later fire women of color with impunity. (*Id.*) In response, Dr. Calvente told Dr. Ghanem that she wrote the letter on Dr. ██████'s behalf that made this accusation. (Calvente Dep. 271:22–272:14, 277:5–278:7.) And the record reveals that Dr. Calvente indeed wrote a letter on Dr. ██████'s behalf stating that Dr. ██████ was caught "in the crossfire" so that the College can show that it terminates white junior faculty so as to avoid a charge that it unfairly targets faculty of color. (Calvente Dep. 265:5–266:13 and Exhibit 132 (Bates labeled Calvente–DePaul 0007095).)

**RESPONSE:** Defendants do not dispute Dr. ███████'s name came up during the meeting because Dr. █████ brought up his name. (Plaintiff's RSOF at ¶82.) The first clause of the second sentence of Plaintiff's SOF ¶41 should be disregarded because it is not supported by the cited materials in that Plaintiff's cited testimony does not reference "complaints about Dr. ███████." The second clause of the second sentence contains improper argument with the statement that Dr. Ghanem "let it slip" and she could terminate women of color "with impunity." *See De*, 912 F. Supp. 2d at 714. However, Defendants do not dispute that Plaintiff testified that Dr. Ghanem stated "she didn't want to hear about ███████ because then we were questioning her leadership and authority, and then she added that she heard a rumor that she was -- she terminated ████'s contract so she can fire women of color, so she could terminate women of color." (Dkt. No. 47-2, Defendants' SOF at Tab B, Calvente Dep. at 272.) Defendants do not dispute the third sentence of Plaintiff's SOF ¶41, except for the clause "in response" and "that made this accusation," which statements are not supported by the cited materials. Defendants do not dispute Plaintiff wrote a letter on Dr. ███████'s behalf, but the cited testimony demonstrates that she did not testify that she told Dr. Ghanem in that meeting that her letter "made this accusation." And in fact, Plaintiff testified that during the meeting with Dr. Ghanem she did not accuse her of discriminatory or retaliatory conduct and Plaintiff separately admitted her letter did not accuse Dr. Ghanem of any improper conduct. (Dkt. No. 47-2, Defendants' SOF at Tab B, Calvente Dep. 298:24-299:11; Dkt. No. 48-18, Defendants' SOF at Tab B, Exhibit 132 at pp. 7094-7097); (Plaintiff's RSOF at ¶79, 82) (admitting that Plaintiff did not complain about Dr. Ghanem's conduct in her letter).) Although immaterial, Defendants dispute Plaintiff wrote in her letter that "Dr. ███████ was caught 'in the crossfire' so that the College can show it terminates white junior faculty so as to avoid a charge that it unfairly targets faculty of color." These statements are not supported by the cited authority, as they are not contained in her letter (Dkt. No. 48-18, Defendants' SOF at Tab B, Exhibit 132 at pp. 7094-7097) and should therefore be disregarded as improper under Local Rule 56.1.

42.     After Dr. Calvente told Dr. Ghanem that she wrote the letter on Dr. ███████'s behalf, Dr. Ghanem called Ms. Schaffer at OIDE and left a voice mail stating that Dr. ██████ and Dr. Calvente believed themselves to be victims of discrimination. (Calvente Dep. 272:15–273:4.) Then Dr. Ghanem ended the meeting. (Calvente Dep. 273:5–273:7.)

**RESPONSE: Defendants do not dispute Plaintiff's SOF ¶42.**

43.     Dr. Ghanem called OIDE because, as a person in a supervisory position at the College, had a duty to report any complaints of discrimination brought to her by faculty to OIDE. (Ghanem Dep. 73:9–74:4.)

**RESPONSE: Defendants do not dispute Plaintiff's SOF ¶43.**

44. After the October 10, 2018 meeting, Dr. Calvente and Dr. Ghanem never again had a meaningful conversation. (Calvente Dec. ¶9.)

**RESPONSE: Plaintiff's SOF ¶44 should be disregarded as improper under Local Rule 56.1 because it is immaterial and the phrase "meaningful conversation" is conclusory, vague, and improper argument. Additionally, Plaintiff's declaration regarding this statement should be disregarded because it is not consistent with Plaintiff's deposition testimony which was that Dr. Ghanem told them that she wanted to continue the conversation, and that they should schedule another meeting with her. (Plaintiff's RSOF at ¶83; Dkt. No. 47-2, Defendants' SOF at Tab B, Calvente Dep. at 272:16–273:4.); *see also Von Holdt*, 2012 WL 13048975, at \*1 (N.D. Ill. Sept. 29, 2012) ("It is well settled in this Circuit that litigants may not manufacture issues of fact by submitting affidavits that contradict the substance of their prior deposition testimony.").)**

45. During the year that Dr. Calvente applied for tenure, the tenured faculty at the College recommended that she not receive tenure by a vote of 19–2. (Calvente Dep. 145:13–16.)

**RESPONSE: Defendants do not dispute Plaintiff's SOF ¶45.**

46. The UBPT conducted an independent review of Dr. Calvente's file, which review included (i) a review of Dr. Calvente's tenure dossier, (ii) a review of the recommendation of the College, (iii) an interview of Dr. Calvente, and (iv) an interview of the dean of the College. (Teboul Dep. 13:16–20:8, 34:16–20.)

**RESPONSE: Defendants do not dispute the steps taken by the UBPT in its review of Plaintiff tenure case as set forth in Plaintiff's SOF ¶46, and do not dispute the UBPT review was "substantive", though the term "independent" is not used in the Handbook. (*See also* Plaintiff's RSOF at ¶¶17, 114, 122-124, 126-28) (admitting the process undertaken in the UBPT review of her tenure case).)**

47. After reviewing Dr. Calvente's file, the UBPT recommended that Dr. Calvente receive tenure by a vote of 4–3. (Answer at ¶28.)

**RESPONSE: Defendants do not dispute Plaintiff's SOF ¶47.**

48. In recommending Dr. Calvente receive tenure, the UBPT found that "Dr. Calvente's teaching, as evidenced by consistently high student evaluations, a strong student

report, and positive peer evaluations, met the standard of consistent effectiveness established in the Faculty Handbook." (Answer at ¶28 and Exhibit 5 to Complaint at pages 1–2.)

**RESPONSE: Defendants do not dispute Plaintiff's SOF ¶48, but note that the quoted language reflects the findings made by the 4-member UBPT majority, not the full 7-member UBPT. (Dkt. No. 48-34, Defendants' SOF at Tab B, Exhibit 215 at pp. 23086-23087.)**

49.     In recommending that Dr. Calvente receive tenure, the UBPT also examined Dr. Calvente's research and scholarly contributions and found that her "total body of work consists of, at minimum, 3 peer–reviewed articles and 3 peer–reviewed book chapters during the probationary period, in additional to 6 papers in international conferences and 10 presentations in national conferences," and that the "significance and quality of her work were praised by [her] external reviewers and echoed by the faculty in the unit report." (Answer at ¶28 and Exhibit 5 to Complaint at pages 2–3.) Thus, the UBPT found "scholarship to have met the minimum standard of notable in the Faculty Handbook." (Answer at ¶28 and Exhibit 5 to Complaint at page 3.)

**RESPONSE: Defendants do not dispute Plaintiff's SOF ¶49, but note that the second and third quoted sections reflect the findings made by 4-member UBPT majority, not the full 7-member UBPT. (Dkt. No. 48-34, Defendants' SOF at Tab B, Exhibit 215 at p. 23088.)**

50.     In recommending that Dr. Calvente receive tenure, the UBPT found Dr. Calvente's overall service contributions to be "sufficiently strong to meet the criteria for service in the Faculty Handbook." (Answer at ¶28 and Exhibit 5 to Complaint at page 3.)

**RESPONSE: Defendants do not dispute Plaintiff's SOF ¶50, but note that the quoted language reflects the findings made by the 4-member UBPT majority, not the full 7-member UBPT. (Dkt. No. 48-34, Defendants' SOF at Tab B, Exhibit 215 at UBPT Letter at p. 23088.)**

51.     Notwithstanding the UBPT's recommendation that Dr. Calvente receive tenure, Dr. Ghanem rejected the recommendation. (Answer at ¶29 and Exhibit 6 to Complaint.) In so doing, Dr. Ghanem wrote that Dr. Calvente received a careful review at all levels and that

experienced faculty had evaluated her work. (*Id.*) She also wrote that she did not consider the UBPT's 4–3 vote to outweigh the alleged significant concerns raised at the College level, which voted 2–19 against Dr. Calvente. (*Id.*)

**RESPONSE: Defendants do not dispute Plaintiff's SOF ¶51.**

52.     Dr. Ghanem is aware of Dr. Calvente complaining about discrimination. (72:2–76:24; Calvente Dep. 271:22–272:14, 277:5–278:7.)

**RESPONSE: Defendants do not dispute Plaintiff's SOF ¶52.**

53.     ███████████ is a white professor at DePaul with no record of complaining about discrimination and who was evaluated for tenure during the 2019/2020 academic year. (Ghanem Dep. 67:18–21; Diaz Dec. ¶7.)

**RESPONSE: Defendants do not dispute Plaintiff's SOF ¶53.**

54.     Before granting tenure to Dr. ██████, the University was required to have reasonable doubt about Dr. ██████'s demonstrated qualifications and continued capacity to contribute to DePaul's distinctive goals and academic mission. (Ghanem Dep. 44:4–45:18; First Rinehart Dec. ¶¶3, 6 and Exhibit 1 to the First Rinehart Declaration at §§3.1, 3.3.1.3, 4.2 (Bates labeled Calvente–DePaul 000028, 31, 55).)

**RESPONSE: The cited evidence does not support the statement in Plaintiff's SOF ¶54 and should therefore be disregarded for failure to comply with Local Rule 56.1.**

55.     In evaluating Dr. ██████'s application and rejecting it by a vote of 6–1, the UBPT identified significant concerns with Dr. ██████'s teaching, including that (i) Dr. ██████'s teaching evaluations are frequently below three on a five–point scale, (ii) there was a pattern in Dr. ██████'s evaluations that showed an inability to communicate with the majority of his students, (iii) forty to fifty percent of Dr. ██████'s students rated Dr. ██████'s ability to communicate subject matter as inadequate, and (iv) the regular recurrence of student concerns

with communicating his expectations for performance, the criteria by which performance is to be evaluated, and the timeliness of his feedback to students, raises questions about the consistent effectiveness of Dr. ███'s teaching. (Ghanem Dep. 102:3–103:9 and Exhibit 27 (Bates labeled Calvente–DePaul 037293–95).)

**RESPONSE: Although immaterial, Defendants do not dispute Plaintiff's SOF ¶55, except that the terms "significant concerns" and "with the majority of his students" are not supported by the evidence cited and are improper argument.** *See De*, **912 F. Supp. 2d at 714.**

56.     In continuing to evaluate Dr. ███'s application for promotion, the UBPT next noted significant concerns about Dr. ███'s scholarship, including the quantity of the work, the consistency of the work, and the quality of the work. (Ghanem Dep. 102:3–103:9 and Exhibit 27 (Bates labeled Calvente–DePaul 037293–95).) More specifically, the UBPT noted that Dr. ███h's scholarship appeared limited to multi–authored pieces and that the UBPT was not provided (despite its requests) information concerning Dr. ███'s contributions to those multi–authored pieces. (Ghanem Dep. 102:3–103:9 and Exhibit 27 (Bates labeled Calvente–DePaul 037293–95).)

**RESPONSE: Although immaterial, Defendants do not dispute Plaintiff's SOF ¶56, except that the term "significant concerns" is not supported by the evidence cited and is therefore, improper argument.** *See De*, **912 F. Supp. 2d at 714.**

57.     Dr. Ghanem agrees that Dr. ███ received a careful review at all levels, that experienced faculty evaluated Dr. ███'s work, and that the UBPT voted overwhelmingly against Dr. ███'s application for tenure. (Ghanem Dep. 105:16–106:1.) Dr. Ghanem also read the entirety of the UBPT's report recommending that Dr. ███ not receive tenure before she granted tenure to Dr. ███ (Ghanem Dep. 102:3–103:9 and Exhibit 27 (Bates labeled Calvente–DePaul 037293–95).)

**RESPONSE: Defendants do not dispute Plaintiff's SOF ¶57.**

58.     Prior to overturning the UBPT's recommendation that Dr. ▮▮▮▮ not receive tenure, Dr. Ghanem read the entire UBPT's report, including the following sentences: "[t]he evaluations of his teaching by students are frequently below three on a five point scale and consistently below the departmental mean," "[t]his case is not one of the occasional negative set of evaluations, but rather a pattern that shows itself in his capacity to communicate with a very large portion of his students," "40 to 50 percent of the students rate his capacity to communicate subject matter content as not adequate," "[m]oreover the pattern is persistent and the concern has not been relieved over time," "[h]is recent evaluations, for example, the 2018 evaluations, contain such comments," and "[i]n addition, the regular recurrence of student concerns with communicating his expectations for performance, the criteria by which performance is to be evaluated, and the timeliness of his feedback to students raises questions about the consistent effectiveness of Dr. ▮▮▮▮s teaching." (Ghanem Dep. 102:19–105:15.)

**RESPONSE: Although immaterial, Defendants do not dispute that among the material she reviewed, Dr. Ghanem read the entire UBPT's report which included the sentences quoted in Plaintiff's SOF ¶58.**

59.     Dr. Ghanem wrote that she awarded tenure to Dr. ▮▮▮▮ in recognition of his "achievements in scholarship, teaching, and service, and in expectation of [his] continued service to [DePaul's] students, the university, and [his] field." (Ghanem Dep. 66:13–67:16 and Exhibit 1 (Bates labeled DePaul–Calvente 013833–34.) Dr. Ghanem *did not* write that she awarded tenure to Dr. ▮▮▮▮ because she believed that he failed to receive a fair process. (*Id.*)

**RESPONSE: Defendants do not dispute the first sentence of Plaintiff's SOF ¶59. Although immaterial, the second sentence of Plaintiff's SOF ¶59misrepresents the evidence and should therefore be disregarded. *See Boyd v. City of Chicago*, 225 F.Supp.3d 708, 715 (N.D. Ill. 2016). Specifically, Dr. Ghanem testified that her "compelling reason [for awarding Dr. ▮▮▮▮ tenure] was a procedural issue based on the informal review that he had received six months before he was going up for tenure where he had a unanimous endorsement by his department." (Dkt. No. 55-1, Defendants' SOF at Tab F, Ghanem Dep. at 106.) Although Defendants admit Dr. Ghanem did not use the term "fair process" in her**

letter, Dr. Ghanem wrote that "[his] department colleagues . . . had voted unanimously (8-0) during a formal review less than six months earlier to extend [his] contract, in full knowledge that [he] would be applying for tenure the following fall" and that although the formal review "include[d] a vote on contract renewal, [it did not], as required by the Handbook, include a vote on whether [he was] making adequate progress toward tenure." (Dkt. No. 55-2, Defendants' SOF at Tab F, Exhibit 1 at pp. 013833-013834.)

60.    Dr. Ghanem was asked how, in light of the fact that Dr. ▆▆▆ received a careful review at all levels, that experienced faculty evaluated Dr. ▆▆▆'s work, and that the UBPT voted overwhelming against him, that anyone could say that "the university has no reasonable doubt as to Dr. ▆▆▆'s demonstrated qualifications and continued capacity to contribute to DePaul's distinctive goals of academic mission when he received a six–to–one no vote at the UBPT." (Ghanem Dep. 105:16–13.) Dr. Ghanem was unable to provide a substantive answer to this question and, instead, relied on alleged procedural defects in Dr. ▆▆▆'s process to support her decision. (*Id.*)

**RESPONSE: Although immaterial, Defendants do not dispute Plaintiff's counsel asked Dr. Ghanem some form of the question stated in the first sentence of Plaintiff's SOF ¶60.**

**Although immaterial, Defendants dispute the first clause of the second sentence, which states "Dr. Ghanem was unable to provide a substantive answer to this question." This clause does not comply with Local Rule 56.1 and should be disregarded because it is conclusory and improper argument and is unsupported by the record. *See De*, 912 F. Supp. 2d at 714. It is also unsupported by the record evidence, which demonstrates she did answer counsel's question and in any event, Dr. Ghanem provided a "substantive" explanation for her decision to award tenure to Dr. ▆▆▆, based on the merits of his case in her letter to him. (Dkt. No. 55-2, Defendants' SOF at Tab F, Exhibit 1 at pp. 013833-013834.) Specifically, she explained that the Chemistry Chair's letter "systematically and convincingly" countered concerns about his teaching effectiveness and research agenda; that he "clearly satisfied" the Chemistry Department's guidelines that require faculty to publish at minimum one peer-reviewed publication every other year, with at least one in the area of expertise for which he was hired; and that her "own reading" of his teaching record more closely matched the Department and College reports.[3] (*Id.* at 013833) In**

---

[3] *See also* Dkt No. 50-5, Tab D, Exhibit 4 at pp. 36971-76 ( the Chair of the Department of Chemistry and Biochemistry stating she "strongly" recommended Dr. ▆▆▆h for promotion and tenure, noting her disagreement with the Department's Personnel Committee); *Id.* at pp. 36984-36986 (The Dean writing "[g]iven that Dr. ▆▆▆h has met the teaching criterial, exceeded the service criteria and objectively met the

awarding tenure, based on her review of his dossier, including Dr. ████'s responses to the department, college, and UBPT recommendation reports, and her attendance at the UBPT hearing, she wrote that her decision was in "recognition of [his] achievements in scholarship, teaching, and service." (*Id*. at 013834.)   Dr. Ghanem also addressed the UBPT's substantive concerns about Dr. ████'s teaching and research record during his probationary period. (*Id*. at 013833-013834.)   Specifically, with respect to research, Dr. Ghanem wrote:

> [T]he formal review summary evaluation of your research record clearly indicates that you had met the bar for promotion and tenure: "The review committee is pleased to see the progress that Dr. ████ has made since joining the department as an Assistant Professor. The department's guidelines for promotion and tenure suggest that faculty should publish at minimum one peer-reviewed publication every other year, with at least one publication in the area of expertise for which the candidate was hired. Dr. ████ has already clearly satisfied this minimum requirement. The committee encourages him to maintain his research momentum to further strengthen his case for promotion and tenure on the basis of research." There is no indication that your research momentum has flagged since this evaluation, and some probability that the perceived lack of coherence in your research agenda is an effect of the cross-disciplinary nature of your research and scholarship. For all the above reasons, I consider your record of research and publication to have met the standard for promotion and tenure.

(*Id*.) With respect to teaching, Dr. Ghanem wrote:

> My own reading of your teaching record more closely matches the department and college reports. I am sure that, given your own focus on science education, you will continue to develop and improve your teaching, as needed.

(*Id*. at 013834.) Additionally, Dr. Ghanem further stated that she rejected the UBPT's recommendation against tenure because less than six months prior to the commencement of his tenure case, Dr. ████ had received a performance review that had unanimously indicated everything was excellent and his department's tenure review report referenced that he "either meets or exceeds" the department's teaching expectations, and that while the faculty unanimously voted to extend his contract in that review they failed to vote on his progress toward tenure as required by the Handbook, and Dr. Ghanem felt that reversal of the UBPT's recommendation was warranted on procedural grounds. (*Id*. at 013833-013834; *See also* Dkt. No. 55-1, Defendants' SOF at Tab F, Ghanem Dep. at 54–55, 106.) Specifically, Dr. Ghanem stated in her letter:

---

scholarship criteria, I recommend favorable action on Dr. ████'s candidacy to associate professor with tenure.")

**[Y]our department colleagues, who were evenly divided in their evaluation of your application for the above reasons, had voted unanimously (8-0) during a formal review less than six months earlier to extend your contract, in full knowledge that you would be applying for tenure the following fall (per your chair, who clarified the timing subsequent to the UBPT hearing). The Unit's . . . formal review report[4] (which you submitted as an addition to your dossier) includes a vote on contract renewal, but does not, as required by the Handbook, include a vote on whether you were making adequate progress toward tenure.**

(*Id*. at p. 013833.) Defendants do not dispute that Dr. Ghanem "relied on alleged procedural defects in Dr. ██████'s process to support her decision."

61.     Dr. ██████ had never before been evaluated by the UBPT before the UBPT rejected his application by a vote of 6–1. (First Rinehart Dec. ¶¶3, 6 and Exhibit 1 to the First Rinehart Declaration at §3.5.6.1 (Bates labeled Calvente–DePaul 000042–43).)

**RESPONSE: Although the cited evidence does not support the statements in Plaintiff's SOF ¶61, and it is immaterial, Defendants do not dispute Plaintiff's SOF ¶61.**

62.     ██████ is a white professor at DePaul with no record of complaining about discrimination. (Diaz Dec. ¶7; Ghanem Dep. 69:9–12.)

**RESPONSE: Although Defendants do not dispute Plaintiff's SOF ¶62, this statement should be disregarded as immaterial because Plaintiff has waived any reliance on this statement of fact because she does not argue that Dr. ██████ is a comparator in her Brief in Support of her Motion for Partial Summary Judgment and she specifically states "the parties did not explore Dr. ██████'s qualifications during discovery." (Dkt. No. 87, Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment at p. 9);** *see also **Ford v. Lumbermens Mut. Cas. Co**.,* **197 F.R.D. 365, 366 (N.D. Ill. 2000) (noting that inclusion of immaterial facts is a "clear violation" of Local Rule 56.1).**

63.     During the 2019/2020 academic year, the UBPT recommended that Dr. ██████ not receive tenure by a vote of 6–1. (Ghanem Dep. 67:22–69:11; Second Rinehart Declaration, copy attached as Exhibit I, and document Bates labeled Calvente–DePaul 03806–87.)

---

[4] *See also* **Dkt No. 50-5, Tab D, Exhibit 4 at pp. 37272-37286 (the Departmental Personnel Committee noting that Dr. ██████'s research record had "already clearly satisfied the minimum requirement" for promotion and tenure (p. 3728), and stating, "Dr. ██████ has contributed notable service at all levels of the university and to the profession/community," (p. 37285), and that "[c]lose examination of the materials submitted by Dr. ██████ made clear that, overall, he exhibits a number of characteristics typical of an effective teacher" (p. 37273).)**

**RESPONSE: Although Defendants do not dispute Plaintiff's SOF ¶63, this statement should be disregarded as immaterial because Plaintiff has waived any reliance on this statement of fact because she does not argue that Dr. ▇ is a comparator in her Brief in Support of her Motion for Partial Summary Judgment and she specifically states "the parties did not explore Dr. ▇'s qualifications during discovery." (Dkt. No. 87, Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment at p. 9); *see also Ford*, 197 F.R.D. at 366.**

64. Before granting tenure to Dr. ▇, the university was required to have no reasonable doubt about the faculty member's demonstrated qualifications and continued capacity to contribute to DePaul's distinctive goals and academic mission. (Ghanem Dep. 44:4–45:18; First Rinehart Dec. ¶¶3, 6 and Exhibit 1 to the First Rinehart Declaration at §§3.1, 3.3.1.3, 4.2 (Bates labeled Calvente–DePaul 000028, 31, 55).)

**RESPONSE: Although Defendants do not dispute Plaintiff's SOF ¶64, this statement should be disregarded as immaterial because Plaintiff has waived any reliance on this statement of fact because she does not argue that Dr. ▇ is a comparator in her Brief in Support of her Motion for Partial Summary Judgment and she specifically states "the parties did not explore Dr. ▇'s qualifications during discovery." (Dkt. No. 87, Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment at p. 9); *see also Ford*, 197 F.R.D. at 366.**

65. Notwithstanding the UBPT's recommendation, Dr. Ghanem granted tenure to Dr. ▇. (Ghanem Dep. 68:11–69:8 and Exhibit 24 (Bates labeled Calvente–DePaul 38092–93).)

**RESPONSE: Although Defendants do not dispute Plaintiff's SOF ¶65, this statement should be disregarded as immaterial because Plaintiff has waived any reliance on this statement of fact because she does not argue that Dr. ▇ is a comparator in her Brief in Support of her Motion for Partial Summary Judgment and she specifically states "the parties did not explore Dr. ▇'s qualifications during discovery." (Dkt. No. 87, Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment at p. 9); *see also Ford*, 197 F.R.D. at 366.**

66. Dr. Calvente's case is the only case where Dr. Ghanem has rejected the UBPT recommendation that a candidate should receive tenure. (Ghanem Dep. 71:4–13.) In all other cases where Dr. Ghanem has rejected the UBPT's recommendation, the candidate had been recommended not to receive tenure. (*See id.*)

**RESPONSE: Although immaterial because Plaintiff only argues Dr. ███'s case and has waived the issue related to "all other cases where Dr. Ghanem has rejected the UBPT's recommendation," Defendants do not dispute Plaintiff's SOF ¶66.**

67.    Dr. ███ applied for tenure the same year that Dr. Calvente applied for tenure.

**RESPONSE: Although Plaintiff's SOF ¶67 contains no evidentiary citation, Defendants do not dispute Plaintiff's SOF ¶67.**

68.    Dr. ███ actively attempted to avoid attaching her name to any complaints of discrimination until October 2018, when Dr. ███ and Dr. Calvente met with Dr. Ghanem to complain about discrimination within the College. (███ Dep. 64:8–70:2, 74:12, 89:6–94:5.)



**RESPONSE: Defendants dispute the statements in Plaintiff's SOF ¶68. Plaintiff examined Dr. ███ on a letter she submitted to OIDE in December 2017, with her name and signature on the letter, where Dr. ███d sought to "document" "areas of potential concern." (Dkt. No. 54-1, Defendants' SOF at Tab I, ███ Dep. at 84-86; _See also_ attached herein as Tab 2, Ex. B to ███ Dep.)**

69.    Dr. ███ never accused Dr. Ghanem of playing racial politics with Dr. ███'s career.

**RESPONSE: Plaintiff's SOF ¶69 should be disregarded as improper under Local Rule 56.1 because it contains no evidentiary citation, is improper argument, vague, and unsupported by the record which contains no reference to the phrase "racial politics." _See De_, 912 F. Supp. 2d at 714. Moreover, Plaintiff testified that it was Dr. ███ who brought up Dr. ███o's name during the meeting with Dr. Ghanem and that Dr. Ghanem cut her off. (Plaintiff's RSOF at ¶82.)**

70.    The Handbook does not allow Dr. Ghanem to reject the UBPT's recommendation for alleged procedural violations. Rather, that power belongs solely to the University President. (First Rinehart Dec. ¶¶3, 6 and Exhibit 1 to the First Rinehart Declaration at §5.1.2.3 (Bates labeled Calvente–DePaul 000080–81).)

**RESPONSE: The first sentence of Plaintiff's SOF ¶70 should be disregarded as improper under Local Rule 56.1 because it contains no evidentiary citation, is improper argument, vague, and unsupported by the record. Specifically, the Faculty Handbook allows the provost to overturn a UBPT recommendation "only in rare instances and for compelling reasons," and Dr. Ghanem explained compelling reasons could include procedural grounds. (Dkt. No. 11, Answer at ¶ 10; Dkt. No. 50-2, Defendants' SOF at Tab**

D, Ex. 1 p. 000043 at ¶ 3.5.6.3; Dkt. No. 55-1, Defendants' SOF at Tab F, Ghanem Dep. at 51:8–54:18, 55:5-17.)  **Defendants further note that the second sentence of Plaintiff's SOF ¶70 should be disregarded as improper under Local Rule 56.1 because the cited evidence does not support the statement and it is improper argument.** *See De*, 912 F. Supp. 2d at 714.

Respectfully submitted,

By: */s/ Anneliese Wermuth*

Attorney for Defendants, Salma Ghanem and DePaul University

Anneliese Wermuth (#6270970)
Nandini K. Sane
Cozen O'Connor
123 N. Wacker Drive, Ste. 1800
Chicago, IL 60606
Telephone:    312/474-7876
Email: awermuth@cozen.com
Email: nsane@cozen.com

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on January 31, 2022 she electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of Illinois using the ECF system, which will send notification of such filing to the following counsel of record:

Fitzgerald T. Bramwell
Law Offices of Fitzgerald Bramwell
77 West Wacker Drive, Suite 4500
Chicago, IL 60601
bramwell@fitzgeraldbramwell.com

s/ *Anneliese Wermuth*
Anneliese Wermuth